IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

MICHAEL SANG CORREA,

       Defendant.

_____

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**
_____

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), Mr. Correa respectfully moves this Court to dismiss the Indictment in this case. The statute of limitations expired prior to the filing of the Indictment. The government, thus, is barred from prosecuting him. The Indictment must be dismissed.

    **I.**    **RELEVANT PROCEDURAL BACKGROUND:**

Mr. Correa's alleged criminal acts took place in March and April of 2006. More than 14 years passed before the United States Government filed the Indictment in this case (June 2, 2020).

    **II.**    **THE GOVERNMENT IS PROHIBITED FROM PROSECUTING AN INDIVIDUAL FOR ANY CRIME AFTER THE STATUTE OF LIMITATIONS HAS RUN**

Pursuant to 18 U.S.C. § 3282(a), except as otherwise expressly provided by law, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been Committed." As indicated above, 14 years have passed between

Mr. Correa's alleged offenses and the date the Indictment was filed.  Therefore, unless an exception applies, the government is barred from prosecuting Mr. Correa.

Here, the government is likely, yet mistakenly, operating under the assumption that the extension of the statute of limitations for certain "Federal crimes of terrorism," found at 18 U.S.C. § 3286(b), applies here.  Section 3286(b) removes any limitation on the prosecution for "any offense listed in section 2332b(g)(5)(B), if the commission of such offense resulted in, or created a foreseeable risk of, death or serious bodily injury to another person." While it is true 18 U.S.C. § 2340A is one of many enumerated offenses in § 2332b(g)(5)(B), it nevertheless is not a qualifying offense for purposes of the statute of limitations found in § 3286(b) because it is not an offense (1) calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; **and** (2) a violation of, *inter alia*, § 2340A (relating to torture). § 2332b(g)(5). As a result, § 3282(a)'s 5-year statute of limitations governs, not § 3286(b).

A violation of § 2340A is not, by itself, a "Federal crime of terrorism."  Without sufficient evidence that the alleged torture was **calculated** to influence or affect the conduct of the government by intimidation or coercion, or to retaliate against government conduct, an act of torture under § 2340A must be prosecuted within five years after it occurred.  Here, the Indictment does not allege that Mr. Correa's criminal acts were calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.  As such, pursuant to § 3282(a), Mr. Correa's prosecution is barred.  *See United States v. Cooper*, 956 F.2d 960, 961-962 (10th Cir. 1992) (holding that if the statute of limitations is to have any meaning, it must be held to operate as a jurisdictional limitation upon the power to prosecute and punish).

    **III.**    <u>**STATUTORY INTERPRETATION AFTER *FISCHER*:**</u>

The Supreme Court recently was tasked with interpreting a criminal statute, The Sarbanes-Oxley Act of 2002. *Fischer v. United States*, 144 S.Ct. 2176 (2024). At the outset, *Fischer* holds that a court must "give effect … to every clause and word of a statute." *Id*. at 2183. In doing so, the Supreme Court instructs to consider both "the specific context" in which the statutory subsection appears and "the broader context of the statute as a whole." *Id*.

As for the "specific context," the Supreme Court in *Fischer* noted that you cannot read subsection (c)(2) of the Act without subsection (c)(1). In essence, the Supreme Court tethered the subsections.[1] *Id*. at 2185. And as for the "broader context," the Supreme Court in *Fischer* looked to the legislative history to see what prompted the legislation in the first place. In doing so, the Supreme Court noted that the criminal statute at question, which was passed within the penumbra of the Sarbanes-Oxley Act of 2002, was a reaction by Congress to address a specific loophole in the law laid bare by the Enron accounting scandal. *Id*. at 2186. Ultimately, the Supreme Court found that the legislative history supported their view that 18 U.S.C. § 1512(c)(2) was limited by 18 U.S.C. § 1512(c)(1).

*Fischer* is instructive here.

---

[1] This, even though the two subsections at issue in *Fischer* were disjunctive. Section 2332b(g)(5)(A) and (B) are conjunctive.

IV.     **THE BROADER CONTEXT (LEGISLATIVE HISTORY) OF §§ 2332b(g)(5) AND 3286:**

Both §§ 3286 and 2332b(g)(5) were passed within the penumbra of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (The USA PATRIOT Act), which was enacted on October 26, 2001, in the wake of the September 11, 2001, terrorism attacks in the United States.[2] Succinctly put, the two statutes, combined, were intended to allow the United States government to track down and prosecute the 9/11 terrorists, along with future terrorists, without the general five year limitation.

To ensure this, Congress first defined "Federal crime of terrorism" § (2332(b)(g)(5)) and then extended the limitations for these terrorism offenses from five to eight years. 18 U.S.C. § 3286(a).  However, for those who commit violent terroristic acts against the United States Government, like the perpetrators of the 9/11 attacks, Congress completely removed any limitation.  § 3286(b).

In doing so, Congress clearly understood the predicate offenses in § 2332b(g)(5)(B) to be one part of § 2332b(g)(5)'s "[d]efinition of Federal [c]rime of [t]errorism," the other part being the "calculated to influence" element in § 2332b(g)(5)(A). § 808; *Terrorism: Section by Section Analysis of the USA PATRIOT Act*, Cong. Research Serv., CRS-49 (Dec. 10, 2001) (observing that "[p]aragraph 2332b(g)(5)(b) lists a number of violent federal crimes within its definition of 'federal crime[s] of terrorism' for purposes of the section's prohibition on acts of terrorism transcending national boundaries" and that

---

[2] United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001, Pub. L. No. 107-56, §§ 808 & 809, 115 Stat. 271, 378 (2001).

§ 808 "amends the definition" by "drop[ping] a number of less serious crimes from the definition" and "plac[ing] several more serious crimes within the definition"); The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot) Act of 2001, H.R. 3162—Section-by-Section Analysis, *reprinted in* 147 Cong. Rec. S11013 ("Definition of Federal crime of terrorism. Both the House and Senate bills included this provision to update the list of predicate offenses under the current definition of 'Federal crime of terrorism,'' 18 U.S.C. § 2332b(g)(5).").

Interestingly, the Bush Administration proposed eliminating the statute of limitations for a much larger laundry list of criminal statutes, regardless of the circumstances under which the crime was committed. The Bush Administration did not want § 2332b(g)(5)(A) limiting the list of "terrorism offenses" that it initially proposed to Congress in negotiations prior to The USA PATRIOT Act being passed. The Bush Administration did not get its way – at least here.

In presenting the final bill to the Senate, Senator Leahy stated that Congress had pared back the Bush Administration's initial proposal, which had "assembled a laundry list of more than 40 Federal crimes ranging from computer hacking to malicious mischief to the use of weapons of mass destruction, and designated them as 'Federal terrorism offenses,' regardless of the circumstances under which they were committed." 147 Cong. Rec. S10996 (daily ed. Oct. 25, 2001) (statement of Sen. Leahy). According to Senator Leahy, "[u]nder the Administration's proposal, the consequences of this designation were severe"—among other things, "[c]rimes on the list [of Federal terrorism offenses] would carry no statute of limitations." *Id.* Recognizing this as a problem, Senator Leahy "worked closely with the Administration to ensure that the definition of 'terrorism' in the [PATRIOT]

Act fit the crime," by "trimm[ing] the list of crimes that may be considered as terrorism predicates in section 808 of the bill." *Id.* The "shorter, more focused, list, to be codified at 18 U.S.C. § 2332(g)(5)(B), more closely reflects the sorts of offenses committed by terrorists." *Id.*; *see also* Section-by-Section Analysis, *reprinted in* 147 Cong. Rec. H7200 ("[Section 808 a]dds new highly egregious offenses to existing definition of Federal crime of terrorism, thereby ensuring that ''coercing government'' is an element of the offense along with other predicates," and "[Section 809 p]rovides that terrorism offenses may be prosecuted without time limitations, however, more focused list of offenses will continue to carry an 8-year statute of limitations except where they resulted in, or created a risk of, death or serious bodily injury").

Succinctly put, the "broader context" here is clear.  Under The USA PATRIOT Act, Congress defined a "Federal crime of terrorism" and then extended the statute of limitations for those specific offenses.  While the statute under which the government is attempting to prosecute Mr. Correa, § 2340A, is a listed predicate offense in § 2332(g)(5)(B), it is not a "Federal crime of terrorism" precisely because the alleged torture here was not calculated to influence or affect government conduct or in retaliation for government conduct.

V. <u>**THE SPECIFIC CONTEXT OF § 2332b(g)(5)(B)**</u>**:**

Given the legislative history, or the "broader context," of both §§ 2332b(g)(5) and 3286, it makes sense to read § 3286's reference to § 2332b(g)(5)(B) as limited by § 2332b(g)(5)(A).  Alone, the offenses listed by Congress in § 2332(g)(5)(B) would not be

"terrorism" offenses.[3] And as such, the statute of limitations for these offenses would not have been extended under The USA PATRIOT Act as part of the "tools" being provided by Congress to "intercept and obstruct" terrorists. Instead, Congress extended the statute of limitations to crimes commonly committed by terrorists attempting to influence or affect the conduct of the United States Government by intimidation or coercion or to retaliate against the United States Government conduct. Only those "certain terrorism offenses" received extended periods of limitations.

Like *Fischer*, here, the specific context, as enlightened by the broader context of both §§ 2332b(g)(5) and 3286, lends credibility to Mr. Correa's reading of the statutes. Congress wanted to provide the United States Government the tools it needed to, in the short term, track down and prosecute the 9/11 terrorists. One of these "tools" was to extend the statute of limitations for a "federal crime of terrorism," the definition of which is found at § 2332b(g)(5) subsection (B)…but only as limited by subsection (A). Mr. Correa's offenses here do not fit within the limitation of § 2332b(g)(5)(A) and, as such, the statute of limitations for his offense was not extended by Congress under § 3286.

## VI.   **THE TITLE OF THE STATUTE MATTERS**:

Section 3286 is titled "Extension of statute of limitation for certain terrorism offenses." *See Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) (noting that the title of a statute is one of the tools available for the resolution of a doubt about the meaning of a statute). The title makes clear Congress' intent was not to simply extend

---

[3] Had the Bush Administration's proposal been adopted by Congress, the government's reliance on § 3286 would not be mistaken. Luckily for Mr. Correa, Senator Leahy adroitly dodged the Bush Administration's desire to define a "Federal crime of terrorism" without any regard as to the circumstances under which the crime was committed.

7

or abolish the statute of limitations for general offenses.  Instead, Congress only intended to extend the statute of limitations for "certain terrorism offenses."  Those "certain terrorism offenses" are defined in § 2332b(g)(5)(B) – as limited by § 2332b(g)(5)(A).

The constraint that subsection (A) places upon subsection (B) is important considering Congress' intent here – as highlighted by the title they chose.  Take, for example, the first crime listed in § 2332b(g)(5)(B), Destruction of Aircraft or Aircraft Facilities – 18 U.S.C. § 32.  An individual can commit an offense under this section if he or she happens to use the wrong phrase when running to the bathroom mid-flight.  In *United States v. Grzeganek*, 841 F.Supp. 1169 (S.D. Florida, 1993), a drunk passenger was charged with a violation of § 32(a)(6) after he stated "the roof was going to go" as he hurried to the bathroom to urinate.[4]  Certainly, this is neither the defendant nor the crime that Congress had in mind when passing The USA PATRIOT Act.  Yet, if § 2332b(g)(5)(B) were not tethered to § 2332b(g)(5)(A), Mr. Grzeganek could still be prosecuted today for the crime of being disruptive on his way to the bathroom that took place in 1993.

Mr. Grzeganek's violation of § 32(a)(6) would only be a "Federal terrorism offense" if he had committed the offense AND did so with the intent to influence or affect the conduct of the government or in retaliation for government conduct.  This important limitation supports the title given to § 3286 by Congress. "Extension of statute of limitation for certain terrorism offenses" does not reflect carelessness, or mistaken drafting for the title is reinforced by a legislative history that speaks about providing Congress with tools

---

[4] "Dann fliegt das Dach," which literally means in English, "then the roof flies," is a colloquialism for urgently needing to go to the restroom.

to track down and prosecute terrorists – not drunken passengers on a plane using a poor choice of words.

And while Mr. Correa's alleged offenses are more serious than that of Mr. Grzeganek's, the same statutory interpretation applies. While Mr. Correa's alleged offenses are predicate crimes listed in § 2332b(g)(5)(B), they are not Federal crimes of terrorism and, therefore, are not subject to the extended statute of limitations for "certain terrorism offenses" at § 3286. Mr. Correa's alleged crimes are instead covered by § 3282, which bars prosecution here.

## VII. THIS COURT IS REQUIRED TO DISMISS MR. CORREA'S INDICTMENT

Mr. Correa is not charged with a "Federal crime of terrorism." As such, § 3286 does not provide the government succor here. Instead, the general five-year statute of limitations set out in § 3282 governs this case. Because the offenses charged in the Indictment occurred in 2006—more than 14 years prior to the filing of the Indictment—the statute of limitations has expired. Accordingly, this case must be dismissed. As the Tenth Circuit has explained, a statute of limitations "operate[s] as a jurisdictional limitation on the power to prosecute and punish.". *Cooper*, 956 F.2d (quotation omitted). In this way, the expiration of a statute of limitations "acts as a bar to prosecution," absent an express waiver. *Id.* At 961–62.

Mr. Correa has not expressly waived the bar to his prosecution found in § 3282. Accordingly, this Court is required to dismiss his Indictment as it was not filed within the five years following the alleged offenses.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


*/s/ Matthew K. Belcher*
MATTHEW K. BELCHER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
Email: Matthew_Belcher@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on August 19, 2024, I electronically filed the foregoing ***Defendant's Motion to Dismiss the Indictment*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Melissa Erin Hindman, Assistant U.S. Attorney
Email:  melissa.hindman@usdoj.gov

Laura Cramer-Babycz, Assistant U.S. Attorney
Email:  Laura.Cramer-Babycz@usdoj.gov

Erin S. Cox, Assistant U.S. Attorney
Email:  Erin.Cox@usdoj.og

Marie S. Zisa, Assistant U.S. Attorney
Email: marie.zisa@usdoj.gov

Christina P. Giffin, Deputy Chief
Email:  Christina.Giffin@usdoj.gov

and that I will mail or serve the document to the following non-CM/ECF participant in the manner indicated:

Michael Sang Correa, Defendant (via mail)

*/s/ Matthew K. Belcher*
MATTHEW K. BELCHER
Assistant Federal Public Defender