IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL SANG CORREA,
    a/k/a MICHAEL CORREA,
    a/k/a SANG CORREA,
    a/k/a MICHAEL COREA,
    a/k/a MICHAEL SANG COREA,
    a/k/a SANG COREA,

    Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT [ECF NO. 155]

Under 18 U.S.C. § 3286(b), there is no statute of limitations "for any offense listed in § 2332b(g)(5)(B), if the commission of such offense resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person." The defendant moves to dismiss the Indictment on the basis that 18 U.S.C. § 3286(b) does not apply to this case, despite the fact that the crime charged here is listed in § 2332b(g)(5)(B). *See* ECF No. 155 ("Def. Mot.").[1] In so arguing, the defendant urges this Court to rely on *Fischer v. United States*, 144 S. Ct. 2176 (2024), and find that § 3286(b)'s unambiguous reference to § 2332b(g)(5)(B) should be read to also require that the charged offense

---

[1] The defendant does not argue—nor could he—that § 3286(b) does not apply because the commission of the offense in this case did not result in serious bodily injury to another person. Accordingly, the government does not focus on that requirement.

1

satisfy the requirement of § 2332b(g)(5)(A). His argument fails based on well-settled principles of statutory interpretation, which *Fischer* did nothing to change. Accordingly, the Court should conclude that § 3286(b)—not § 3282's five-year limitations period—applies to the offenses charged in this case and deny the motion.

## I. Statutory framework

Section 3286, titled "Extension of statute of limitation for certain terrorism offenses," (1) extends the statute of limitations to eight years for "any noncapital offense involving a violation of any provision listed in section 2332b(g)(5)(B), or a violation of [other code sections not relevant to this case]," 18 U.S.C. § 3286(a); and (2) removes *any* limitation on charging "any offense listed in section 2332b(g)(5)(B), if the commission of such offense resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person," *id.* § 3286(b). Section 2332b(g)(5)(B), in turn, sets forth a list of offenses, including the offense charged here—§ 2340A. *See* 18 U.S.C. § 2332b(g)(5)(B)(i).

The offenses listed in § 2332b(g)(5)(B) also separately serve as part of the definition of the term "Federal crime of terrorism." Specifically, where the offenses listed in § 2332b(g)(5)(B) are "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A), they then become a "Federal crime of terrorism," *id.* § 2332b(g)(5). In other words, § 2332b(g)(5) requires an offense to satisfy both subsections (A) and (B) to be considered a federal crime of terrorism.

## II. Section 3286(b) dictates that there is no statute of limitations in this case

Section 3286(b) unambiguously removes any time limitation on charging "any

2

offense listed in section 2332b(g)(5)(B)," which includes the torture statute charged in this case. The defendant attempts to avoid that plain language primarily by arguing that, based on the legislative history, Congress meant only to extend the limitations period for "Federal crimes of terrorism"—*i.e.*, only those offenses listed in § 2332b(g)(5)(B) that were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct," 18 U.S.C. § 2332b(g)(5)(A). His attempt fails based on a plain reading of § 3286(b) and well-settled principles of statutory interpretation.

### A. Principles of statutory interpretation.

When interpreting a statute, "a court should always turn first to one, cardinal canon before all others": courts must presume "that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. German*, 503 U.S. 249, 253–54 (1992); *see also United States v. Duong*, 848 F.3d 928, 931 (10th Cir. 2017) ("Any exercise in statutory interpretation must begin with an examination of the plain language at issue." (internal quotation marks and citation omitted)). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank*, 503 U.S. at 254; *see also United States v. Green*, 967 F.2d 459, 461 (10th Cir. 1992) ("If the terms of the statute are unambiguous, our inquiry ends."). In that circumstance, reliance on other canons of statutory interpretation or legislative history is unnecessary. *See Sunnyside Coal Co. v. U.S. Dep't of Labor*, --- F.4th ----, 2024 WL 3764555, at *5 (10th Cir. Aug. 13, 2024) (explaining that, if "the text of the statute is clear, 'reliance on legislative history is unnecessary'" (quoting *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458–59 (2012))); *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227,

3

1232 (10th Cir. 2016) (declining to apply canons of statutory interpretation, including *ejusdem generis* and *noscitur a sociis*, where the statutory language was clear); *United States v. Husted*, 545 F.3d 1240, 1247 (10th Cir. 2008) (explaining that "it is a longstanding principle that absent ambiguity we cannot rely on legislative history to interpret a statute").

### B. Applying well-settled principles of statutory interpretation, § 3286(b) unambiguously applies to all offenses listed in § 2332b(g)(5)(B) and does not require that those offenses also satisfy § 2332b(g)(5)(A).

The plain language of § 3286(b) unambiguously extends the limitations period for any offense listed in § 2332b(g)(5)(B), including the torture offense charged here. *See Nezirovic v. Holt*, 779 F.3d 233, 238 (4th Cir. 2015) ("There is no statute of limitations under the Torture Act [*i.e.*, § 2340A] when, as here, the acts of torture 'resulted in, or created a forseeable [sic] risk of, death or serious bodily injury to another person.'" (citing 18 U.S.C. § 3286(b); 18 U.S.C. § 2332b(g)(5)(B)(i))); *see also United States v. Ghayth*, No. 98 Crim. 1023 (LAK), 2013 WL 12226036, at *1 (S.D.N.Y. Nov. 26, 2013) (explaining that "government easily refute[d] defendant's statute of limitations argument" that "a five-year statute of limitations applie[d] to 18 U.S.C. § 2332(b), the statute under which he [was] charged" because § 3286(b)'s "extension of time clearly applie[d]" to that offense). Section 3286(b), further, clearly does *not* require that the offense also satisfy § 2332b(g)(5)(A) in order for the limitations period to be extended. Thus, the Court should begin and end its analysis with the plain language of § 3286(b) and conclude that no statute of limitations applies to the offenses listed in § 2332b(g)(5)(B)—including § 2340A—regardless of whether those offenses were "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government

4

conduct."

This Court may, nonetheless, "[b]roaden[] [its] analytical lens" to consider whether other statutory language supports that conclusion. *United States v. Burkholder*, 816 F.3d 607, 615 & n.6 (10th Cir. 2016) (explaining that consideration of language used in other federal criminal statutes was consistent with focus on plain language of statutory language at issue). Doing so here only further confirms that Congress meant what it said when it extended the limitations period for any offense listed in § 2332b(g)(5)(B).

First, if, as the defendant argues, Congress meant to extend the limitations period for only those crimes that satisfy both § 2332b(g)(5)(A) and § 2332b(g)(5)(B), it could have done so by referring to the term "Federal crime of terrorism" as defined in § 2332b(g)(5). Indeed, Congress did so in other statutes. *See, e.g.*, 18 U.S.C. § 932(b)(2) (criminalizing straw purchases where the individual knew or had reasonable cause to believe that the person for whom they purchased the firearm "intend[ed] to use, carry, possess, or sell or otherwise dispose of the firearm in furtherance of a . . . Federal crime of terrorism"); *id.* § 932(a)(2) ("the term 'Federal crime of terrorism' has the meaning given that term in section 2332b(g)(5)"); *id.* § 981(a)(1)(G)(i) (providing that foreign and domestic assets are subject to civil forfeiture if they belonged to "any individual, entity, or organization engaged in planning or perpetrating any . . . . Federal crime of terrorism (as defined in section 2332b(g)(5))"). That Congress elsewhere referred to "Federal crime of terrorism" strongly supports the conclusion that it did not mean to incorporate that term in § 3286(b). *See Burkholder*, 816 F.3d at 615 (in concluding at § 841(b)(1)(E)(i) required "only but-for causation," court considered other federal criminal statutes that demonstrated "Congress clearly knew how to add a proximate-cause requirement in

5

criminal penalty-enhancement statutes when it wished to do so").

Conversely, Congress has elsewhere referred to "offense[s] listed in section 2332b(g)(5)(B)." *See, e.g.*, 18 U.S.C. § 1028A(a)(2) (providing for a maximum term of imprisonment of five years, rather than two, for aggravated identity theft committed "during and in relation to any felony violation enumerated in section 2332b(g)(5)(B)" and using the heading "Terrorism offense"); *id.* § 2339A (a person provides material support to terrorists by "provid[ing] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out, a violation of" any of the numerous offenses listed "or any offense listed in section 2332b(g)(5)(B)");[2] *id.* § 3142(e)(3) (providing presumption of detention if "there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed"); *id.* § 3583(j) (providing that "the authorized term of supervised release for any offense listed in section 2332b(g)(5)(B) is any term of years or life"). In cases addressing those circumstances, courts have applied the plain statutory language without any discussion of § 2332b(g)(5)(A). *See, e.g.*, *United States v. Hayne*, 835 F. App'x 855,

---

[2] Section 2339A(a) is not the most artfully drafted in that it defines material support by reference to "any offense listed in section 2332b(g)(5)(B)" and other enumerated offenses, including offenses that are listed in § 2332b(g)(5)(B). *Compare* 18 U.S.C. § 2332A(a) (listing, among other offenses, "section 32, 37, 81" and "2340A"); *with id.* § 2332b(g)(5)(B) (listing, among other offenses, "section 32 (relating to destruction of aircraft or aircraft facilities), 38 (relating to violence at international airports), 81 (relating to arson within special maritime and territorial jurisdiction)" and "2340A (relating to torture)"). As relevant here, however, under § 2339A(a), a person who "provides material support or resources . . . knowing or intending that they are to be used in preparation for, or in the carrying out, a violation of . . . § 2340A" commits the crime of "[p]roviding material support to terrorists" without any requirement that the conduct satisfy § 2332b(g)(5)(A).

857 (6th Cir. 2020) (rejecting defendant's argument—based on title of § 3583(j) ("Supervised release terms for terrorism predicates")—that lifetime supervision was "explicitly limited to 'terrorism' violations," and instead finding that the "district court . . . was clearly authorized to impose a lifetime term of supervised release" because defendant's convictions were for offenses listed in § 2332b(g)(5)(B)); *United States v. Tarrio*, 605 F. Supp. 3d 73, 77–78 (D.D.C. 2022) (explaining that rebuttable presumption of detention applied because there was probable cause to believe defendant committed an offense listed in § 2332b(g)(5)(B)—*i.e.*, § 1361—without any requirement that the enumerated crime also satisfy § 2332b(g)(5)(A)); *United States v. Klein*, 539 F. Supp. 3d 145, 152 (D.D.C. 2021) (same).

Thus, just as Congress intentionally referred to "Federal crime of terrorism" when requiring that an offense satisfy both § 2332b(g)(5)(A) and (B), Congress also referred only to the "offenses listed in" § 2332b(g)(5)(B) when it intended to apply a statutory provision more broadly. This Court should give effect to Congress' intent as evidenced by the plain language of § 3286(b). *See Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 861 (10th Cir. 1993) ("The best evidence of Congressional intent is the text of the statute itself and where the language is unambiguous, [a court's] inquiry is complete.").

### C. The defendant's arguments to the contrary are unpersuasive because they ignore the plain text of the statute and the well-settled principles of statutory interpretation.

Here, the defendant completely ignores the plain text of § 3286(b)—eliding the first and most fundamental canon of statutory interpretation—and skips ahead to consideration of legislative history. As discussed more fully below, the defendant's suggestion that *Fischer* permits such an analysis is wrong. But, in the face of

7

unambiguous statutory language, the defendant's reliance on legislative history is problematic for an additional reason. This is not a situation in which legislative history can aid in the interpretation of ambiguous language. Rather, the defendant relies on legislative history in an effort to entirely "replace the actual text [of § 3286(b)] with speculation as to Congress' intent"—an exercise in which courts are prohibited from engaging. *Hooper v. City of Tulsa*, 71 F.4th 1270, 1282 (10th Cir. 2023); *see also United States v. Pauler*, 857 F.3d 1073, 1077 (10th Cir. 2017) ("[W]hat matters is the law the Legislature *did* enact. We cannot rewrite that to reflect our perception of legislative purpose." (emphasis in original) (internal quotation marks and citation omitted)). The defendant's reliance on § 3286(b)'s title is similarly unpersuasive in light of the unambiguous language. *See I.N.S. v. Nat'l Ctr. For Immigrants' Rights, Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving *an ambiguity* in the legislation's text." (emphasis added)).

The defendant's argument about "absurd results" also fails. *See* Def. Mot. at 8 (regarding 18 U.S.C. § 32 (destruction of aircraft or aircraft facilities)). In order to show that § 3286(b)'s application to "any offense listed in § 2332b(g)(5)(B)" would yield "absurd results" he must "surmount a formidable hurdle" by showing that "it would have been *unthinkable* for Congress to have intended the result commanded by the words of the statute." *Robbins v. Chronister*, 435 F.3d 1238, 1241–42 (10th Cir. 2006) (emphasis added). In an apparent attempt to make such a showing, the defendant asserts that the defendant in *United States v. Grzeganek*, 841 F. Supp. 1169 (S.D. Fl. 1993), "could still be prosecuted today for the crime of being disruptive on his way to the bathroom . . . in 1993." Def Mot. at 8. Not so. Section 3286(b) only removes the limitations period for

8

"offenses listed in section 2332b(g)(5)(B)" that "resulted in, or created a for[e]seeable risk of, death or serious bodily injury to another person."  To the extent the defendant seeks to point out that some offenses listed in § 2332b(g)(5)(B) are less serious than others on that same list—and therefore less deserving of an extended limitations period—even the legislative history he cites demonstrates that it was a carefully considered list targeted at what Congress itself considered aggravated.  *See* Def. Mot. at 5.

Accordingly, the Court should rely on the plain, unambiguous text of § 3286(b) to conclude that no time limitation applies to the § 2340A charges in this case.

### D. *Fischer* did not alter well-settled principles of statutory interpretation.

The Supreme Court's recent decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), does not alter that result.  Although the defendant's motion suggests that *Fischer* somehow changed the principles of statutory interpretation, *see* Def. Mot. at 3, a close reading of *Fischer* demonstrates otherwise.

In *Fischer*, the Supreme Court considered 18 U.S.C. § 1512(c)(2) of the Sarbanes-Oxley Act, which imposes criminal liability on anyone who "otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so."  *Fischer*, 144 S. Ct. at 2181.  In particular, the Court there "consider[ed] whether this 'otherwise' clause should be read in light of the limited reach" of the preceding clause—§ 1512(c)(1)—which "imposes criminal liability on anyone who corruptly 'alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding.'"  *Id.* (quoting 18 U.S.C. § 1512(c)(1)).  Although the parties in *Fischer* agreed that "[t]he purpose of the 'otherwise' clause" was "to cover some set of 'matters not specifically contemplated by (c)(1)," "[t]he

9

problem [was] defining what exactly Congress left for (c)(2)." *Id.* at 2183. The defendant argued that (c)(2) "criminalize[d] only attempts to impair the availability or integrity of evidence" because it was necessarily tethered to (c)(1), *id.* at 2182, while the government asserted that the otherwise clause "cover[ed] all forms of obstructive conduct *beyond* Section 1512(c)(1)'s focus on evidence impairment," *id.* at 2185 (emphasis in original).

The *Fischer* Court ultimately concluded that "the scope of (c)(2) is defined by reference to (c)(1)," and, therefore, to prove a violation of (c)(2), "the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Id.* at 2190. In so doing, the Court adhered to well-settled principles of statutory interpretation. First, the Court implicitly concluded that the statutory text was ambiguous. *See id.* at 2183 (explaining the "problem [was] defining what exactly Congress left for (c)(2)"). It then went on to consider other canons of statutory interpretation, including the canons of *noscitur a sociis* and *ejusdem generis*. *See id.* at 2183–84. Given the text's ambiguity, the Court also considered the history of § 1512. *See id.* at 2186. Notably, nowhere did the *Fischer* Court suggest that it was altering the longstanding and well-settled principle of statutory interpretation that limits reliance on legislative history to only those circumstances where the statutory text is ambiguous. *See Sunnyside Coal Co. v. U.S. Dep't of Labor*, --- F.4th ----, 2024 WL 3764555, at *5 (10th Cir. Aug. 13, 2024) (continuing, after *Fischer*, to apply well-settled law that, if "the text of the statute is clear, reliance on legislative history is unnecessary" (quoting *Mohamad v. Palestinian Auth.*, 566 U.S. 499, 458–59 (2012))).

Nor did the *Fischer* Court suggest—as the defendant does here, *see* Def. Mot. at

10

4—that consideration of the "broader context of the statute" equates to the statute's legislative history. Although, in conducting its statutory interpretation, the *Fischer* Court explained that it considers "both 'the specific context' in which (c)(2) appears and 'the broader context of the statute as a whole,'" *Fischer*, 144 S. Ct. at 2183 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)), the case on which *Fischer* relied for that proposition makes clear that the relevant "broader context" is other statutory provisions, *see Robinson*, 519 U.S. at 341 (referencing other statutory provisions within Title VII in determining whether language of § 704(a) of that statute was plain or ambiguous).

As set forth above, nothing about the "broader context"—*i.e.*, other statutory provisions—renders § 3286(b) ambiguous. And *Fischer* does not sanction reliance on legislative history when the statutory text is plain and unambiguous. The Court, therefore, should reject the defendant's arguments to the contrary.

> **E. Even if consideration of legislative history was proper, the legislative history does not support the defendant's argument.**

Even if this Court considered the legislative history of § 3286(b) on which the defendant relies, it does not support the defendant's argument that Congress intended the extended statute of limitations to apply only to "Federal crimes of terrorism." In particular, Senator Leahy explained that the final bill "trimmed the list of crimes that may be considered as terrorism predicates," and that the "shorter, more focused list, to be codified at 18 U.S.C. § 2332(g)(5)(B) [sic], more closely reflect[ed] the sorts of offenses committed by terrorists." 147 Cong. Rec. S10990-02, 147 Cong. Rec. S10990-02, S10996, 2001 WL 1297566 (Oct. 25, 2001). He went on to explain that "we have provided, in section 809, that the current 8-year limitations period *for this new set of offenses* will remain in place, except where the commission of the offense resulted in, or

created a risk of, death or serious bodily injury." *Id.* (emphasis added). In other words, Senator Leahy's reference to § 2332b(g)(5)(B) when describing this new, narrow list of offenses—rather than to "Federal crime of terrorism" or both § 2332b(g)(5)(A) and § 2332b(g)(5)(B)—strongly suggests that § 3286(b) applies to cases such as this one. Thus, even the legislative history on which the defendant relies makes clear that the extended statute of limitations applies to the offenses listed in § 2332b(g)(5)(B), without any requirement that they also satisfy § 2332b(g)(5)(A).

### III. Conclusion

The plain, unambiguous text of § 3286(b) removes any limitations period for the violations of § 2340A charged in this case. Accordingly, there has been no statute-of-limitations violation, and the defendant's motion to dismiss should be denied.

Respectfully submitted this 26th day of August, 2024.

    MATTHEW T. KIRSCH
    Acting United States Attorney

    *s/ Melissa Hindman*
    Assistant U.S. Attorney
    U.S. Attorney's Office
    1801 California St., Ste. 1600
    Denver, CO 80202
    Telephone: 303-454-0100
    Fax: 303-454-0401
    E-mail: Melissa.Hindman@usdoj.gov
    Attorney for the Government

    *s/ Laura Cramer-Babycz*
    Assistant U.S. Attorney
    U.S. Attorney's Office
    1801 California St., Ste. 1600
    Denver, CO 80202
    Phone: (303) 454-0100
    Fax: 303-454-0401
    Email: Laura.Cramer-Babycz@usdoj.gov

Attorney for the Government

NICOLE M. ARGENTIERI
Principal Deputy Assistant Attorney General
Head of the Criminal Division

By: *s/Christina Giffin*
Christina Giffin
District of Columbia Bar No. 476229
Deputy Chief
United States Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 1200
Washington, D.C. 20530
Telephone: (202) 514-5792
Facsimile: (202) 305-4624
Email: Christina.Giffin@usdoj.gov

By: *s/Marie Zisa*
Marie Zisa
New York Bar No. 5663265
Trial Attorney
United States Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 1200
Washington, D.C. 20530
Telephone: (202) 305-3731
Facsimile: (202) 305-4624
Email: Marie.Zisa@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of August, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification to all counsel of record.

*s/Portia Peter*
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100