IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL SANG CORREA,
    a/k/a MICHAEL CORREA,
    a/k/a SANG CORREA,
    a/k/a MICHAEL COREA,
    a/k/a MICHAEL SANG COREA,
    a/k/a SANG COREA,

    Defendant.

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY OF DR. AKINSULURE-SMITH

The defendant moves to preclude the expert testimony of Dr. Adeyinka Akinsulure-Smith in its entirety on the basis that it is "not relevant to facts in dispute at trial." ECF No. 153 ("Def. Mot.") at 1. Specifically, the defendant asserts that he does not intend to dispute "every minute detail" of the victims' torture, and, therefore, testimony from an expert in trauma and its effects will not aid the jury in determining a fact in issue. *See id.* at 4. As explained below, however, the jury will still be required to determine, based on witness testimony, whether the defendant committed and/or aided and abetted torture, as well as whether he knowingly joined the charged conspiracy. That same testimony is also relevant to the highly contested issue of duress. Dr. Akinsulure-Smith's testimony about the psychological effects of trauma is therefore relevant and will assist the jury. Further, the way in which her expert testimony will assist the jury does not constitute

1

impermissible vouching. *See* Def. Mot. at 4–5. Because Dr. Akinsulure-Smith's testimony will give the jury a relevant understanding of trauma to allow jurors to make their own decisions regarding witness credibility and the relevant evidence, it is wholly permissible. Accordingly, the Court should deny the defendant's motion to preclude.

**I.     Legal Framework**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Pursuant to Rule 702, before a court admits expert testimony, it must ensure that the testimony "1) has 'a reliable basis in the knowledge and experience of [the expert's] discipline,' and 2) is 'relevant to the task at hand.'" *United States v. Chapman*, 839 F.3d 1232, 1237 (10th Cir. 2016) (quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 & 597 (1993)). Rule 702's requirement that the proffered testimony "help the trier of fact to understand the evidence or to determine a fact in issue" is "a relevance test for expert testimony." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1217 (10th Cir. 2016) (citing *Daubert*, 509 U.S. at 591).

## II. Dr. Akinsulure-Smith's proffered testimony Is admissible and will aid the jury.

The defendant does not contest Dr. Akinsulure-Smith's qualifications or whether her opinions have a sufficient basis in facts or data. Instead, he argues that (1) her testimony about the effects of trauma is not relevant because he does not intend to dispute "whether the alleged victims accurately recalled every minute detail of their assault" and (2) in any event, her testimony "would only serve to bolster the victims' testimony." Def. Mot. at 4. As explained below, both arguments fail.

### a. Notwithstanding the defendant's purported concessions, Dr. Akinsulure-Smith's proffered testimony is relevant and helpful to the jury.

In cases in which victims have experienced trauma in analogous circumstances, such as sexual assaults or domestic violence, the Tenth Circuit has repeatedly upheld the admission of testimony by psychological experts to assist the jury in assessing victims' testimony. *See Chapman*, 839 F.3d at 1239 (rejecting a defendant's challenge to expert testimony where the expert did not opine on whether the victim was telling the truth or whether she was the aggressor but rather explained that "victims of domestic abuse engage in self-injury as a coping mechanism"); *United States v. Parson*, 84 F.4th 930, 937–938 (10th Cir. 2023) (upholding the admission of expert testimony regarding "the process of child-sexual-abuse disclosures and the characteristics and behaviors of children who make such disclosures," noting that "the average juror often lacks expertise on the characteristics of victims of child sex abuse"). Other courts have similarly found such testimony admissible. *See United States v. Bighead*, 128 F.3d 1329, 1331 (9th Cir. 1997) (affirming admission of expert testimony regarding "general characteristics of child sexual abuse victims, specifically the timing of their reporting and their recollection of

3

details," which had "significant probative value in that it rehabilitated (without vouching for) the victim's credibility after she was cross-examined . . . about the inconsistencies in her testimony" (cited by *Parson*, 84 F.4th at 939)); *United States v. Perrault*, No. CR 17-02558-MV-1, 2019 WL 1024284, at *4 (D.N.M. Mar. 4, 2019) (allowing expert testimony about, *inter alia*, "victim behavior, reactions, and characteristics" and stating that it "falls within the permissible parameters of general victim characteristics that has been allowed by courts").  The same should be true of victims of torture.

Here, witnesses will explain their personal experiences of being tortured at the hands of the defendant and his co-conspirators.  They will explain their observations during their arrests, interrogations, transportation, beatings, and detention.  As the diversity of victims and witnesses will display, the traumatic effect their experiences had on their perception, memory, recall, and demeanor varies greatly.  Some are able to recount some minute details but are unable to place these details in the context of time, place, or chronological order.  Some recall the events seemingly without emotional response or while displaying incongruent responses such as laughter, and some become angry or overwhelmed by seemingly innocuous questions.  Some have made numerous statements about their abuse with changes in the details and context they are able to provide, and some have avoided discussing their experiences to the extent possible.  One victim in particular was diagnosed with post-traumatic stress disorder, and the trauma has taken a significant toll on his life.

Against that backdrop, Dr. Akinsulure-Smith's testimony will educate jurors about the psychological effects of trauma caused by physical abuse, including the various factors that affect individual responses to the bio-, psycho-, and socio- impact of trauma.

*See* Expert Report of Dr. Adeyinka Akinsulure-Smith, Ex. 1.  She will explain how victims' involuntary biological responses—such as fight, flight, faint, dissociation, or appeasement responses—affect how memories from that trauma are created, or encoded, and later retrieved.  She will elaborate on the cognitive symptoms and the emotional and behavioral functioning issues that frequently arise for survivors.  She will explain the social responses that are consistent with such trauma, and the varieties of presentations that victims exhibit when they revisit these experiences.  And lastly, she will opine on the cultural aspects and other factors before, during, or after the trauma that can shape a survivor's resiliency.  Such information will assist the jury as they evaluate the reliability of victims and witnesses when they recount the details of their abuse and other observations made in that context in ways that may seem, to a layperson, inconsistent with such an experience.  *See United States v. Garcia*, 635 F.3d 472, 476–77 (10th Cir. 2011) (explaining that "whether the testimony is within the juror's common knowledge and experience" is relevant to determining "whether testimony will assist the trier of fact" (internal citations omitted)).

The defendant's purported concession does not alter that analysis.  It is the government's burden to prove beyond a reasonable doubt every element of the torture charges, including as relevant here, whether the defendant "committed an act with the specific intent to inflict severe physical pain or suffering," 18 U.S.C. § 2340A, or aided and abetted such conduct, *id.* § 2.  Although the defendant asserts that "[t]he question of whether the alleged victims accurately recalled every minute detail of their assault will not be at issue," Def. Mot. at 4, the defendant has notably not offered any stipulation to the government in which he concedes the elements of the torture charges or stipulates to the

horrific acts of torture about which the victims and other witnesses will testify.[1] Accordingly, the witnesses will still be required to testify regarding their torture, and it is likely the defendant will attack at least some aspects of the witnesses' testimony regarding their torture, including the nature and extent of the defendant's role in it. Because the jury will still be required to determine whether, based on the witnesses' testimony, the defendant committed and/or aided and abetted torture and whether he knowingly joined the charged conspiracy, Dr. Akinsulure-Smith's expert testimony will assist the jury in assessing the witnesses' testimony. Moreover, if the proponent demonstrates to the court by a preponderance of the evidence that the expert's testimony will help the trier of fact, *see United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009), any "[d]oubts about whether [her] testimony will be useful should . . . be resolved in favor of admissibility," *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir. 2014) (explaining that doubts about usefulness of expert testimony "should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions").

The defendant's argument also incorrectly assumes that the witnesses' testimony is only relevant to the issue of torture. The same witnesses' testimony that would be elucidated by the trauma expert, however, is also relevant to the defendant's claim of

---

[1] Even if the defendant did offer such stipulations, "the prosecution is entitled to prove its case by evidence of its own choice"—in other words, "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 186–87 (1997); *accord United States v. Martinez*, 92 F.4th 1213, 1243 (10th Cir. 2024) (explaining that courts are "generally reluctant to tell the government how to prove a particular element, and have limited the introduction of evidence in the face of a stipulation only when the element involves the defendant's status as a convicted felon" (cleaned up)).

duress.  *See* Def. Mot. at 4.  As relevant here, such a claim requires that the defendant prove that (1) he was under a "present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself or a family member;" and (2) he "had no reasonable, legal alternative to violating the law." *Pattern Crim. Jury Instr. 10th Cir.* No. 1.36 (2021).[2]  The witnesses who will recount their own experiences of abuse are likely to provide testimony that bears on those two elements.  Such testimony will include statements by the defendant and co-conspirators as well as descriptions of the actions taken by the defendant and other Junglers in the course of torturing the witnesses.  Witnesses will explain the length of time that the defendant and his co-conspirators engaged in their torture, the role the defendant played among his fellow torturers, and the interactions they observed among the Junglers, including observations of Junglers who refused to participate in certain acts of torture or follow certain orders.  Given that much of that testimony will cut against the defendant's duress claim, it is likely that he will vigorously challenge it on cross-examination.  Accordingly, this expert's testimony will provide the jury with a framework to assess the

---

[2] The full duress defense instruction requires that the defendant prove the following elements:

1. The defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself or a family member;
2. The defendant had no reasonable, legal alternative to violating the law, that he had no chance both to refuse to do the criminal act and also to avoid the threatened harm; and
3. The direct causal relationship could have been reasonably anticipated between engaging in the criminal action and avoiding the threatened harm.

Pattern Crim. Jury Instr. 10th Cir. No. 1.36 (2021).

7

witnesses' testimony and credibility (without vouching for it, as explained below) regarding issues related to duress, which is inextricably intertwined with the testimony about their torture.  See United States v. Riggs, No. 23-5062, 2024 WL 2873897, at *10 (10th Cir. June 7, 2024) (unpublished) (explaining that expert testimony "helped the jury evaluate [the victim's] credibility" in light of defendant's attempts to discredit her testimony).

To the extent the defendant relies on United States v. Arney, 248 F.3d 984 (10th Cir. 2001), for the general proposition that irrelevant expert testimony should be excluded, the facts of that case are wholly inapposite.  As relevant here, the defendant in Arney was charged with and convicted of bank fraud, and the Tenth Circuit upheld the district court's exclusion of the defendant's proffered expert testimony regarding "accounting methods, IRS requirements for farmers, income reporting, and the significance of undergoing an IRS audit." Id. at 986, 990.[3]  In so doing, the Tenth Circuit explained that "the legal theory in [that] case—that [the defendant's] submission of false tax returns was a material misrepresentation—undermined [the defendant's] need for expert testimony on the accounting and tax issues."  Id. at 991.  Here, as explained above, the witnesses will be required to testify about their torture, as well as other attendant facts that bear on the defendant's duress claim.  Whether those witnesses' accounts are reliable will be a question the jury will necessarily have to consider.  The proposed expert testimony about the effects of trauma will, therefore, assist the jury in assessing victim testimony, and is relevant for that reason.

---

[3] The Tenth Circuit also found that certain aspects of the same expert testimony were either cumulative or not within the expert's area of expertise.  See Arney, 248 F.3d at 991.  The defendant here does not rely on Arney for those propositions, nor could he: no other trial witness will provide the same information as Dr. Akinsulure-Smith and her proffered testimony is undisputedly within her area of expertise.

8

Thus, Dr. Akinsulure-Smith's testimony should be admitted.

### b. Dr. Akinsulure-Smith's proffered testimony does not improperly vouch for the victims.

The defendant also challenges Dr. Akinsulure-Smith's testimony on the basis that it would improperly bolster the victims' testimony.[4]  Not so.

As the Tenth Circuit has held, "expert testimony which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702."  *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999). The Tenth Circuit, however, has generally found such impermissible bolstering where the expert "explicitly commented on the credibility of the witnesses."  *Parson*, 84 F.4th at 939; *see United States v. Hill*, 749 F.3d 1250, 1267 (10th Cir. 2014) (finding that testimony of law enforcement official who claimed to be "specially trained in ferreting out lies" and opined on defendant's credibility was inadmissible); *Charley*, 189 F.3d at 1267 (finding expert testimony inadmissible where expert gave "unconditional opinion that each of the girls was in fact sexually abused" because expert was "essentially vouching for [the victims'] truthfulness").  In contrast, the Tenth Circuit has generally rejected claims of impermissible bolstering where the expert did not explicitly opine on the credibility of a witness or victim, or about whether a crime had been committed.  *See Parson*, 84 F.4th at 939 (noting that expert did not opine on victim's credibility or whether a crime had occurred, and further testified that "she never spoke with [the victim], had not reviewed

---

[4] The Tenth Circuit has used the terms "bolstering" and "vouching" synonymously when referring to "expert testimony that express[es] a belief or opinion regarding a witness's credibility."  *United States v. Walker*, 85 F.4th 973, 985 n.9 (10th Cir. 2023).

any documents relating to [the victim], and did not know whether [the defendant] molested [the victim]"); *see also Riggs*, 2024 WL 2873897, at *10 (finding that psychological expert did not improperly vouch for the victim's credibility where the expert did not know anything about the victim's interviews); *United States v. Koruh*, No. 99-2138, 2000 WL 342252, at *2, *4 (10th Cir. Apr. 3, 2000) (unpublished) (affirming the district court's ruling to admit expert testimony and noting "[e]xpert testimony which addresses 'a class of victims generally,' and not the 'particular testimony of the [] victim in the case,' is admissible").

The latter is the case here. Dr. Akinsulure-Smith will not opine about whether, in her view, any specific witness is credible, or whether they were tortured. Indeed, she has not met any of the witnesses or reviewed any of the reports of their interviews. Just as in *Riggs*, Dr. Akinsulure-Smith does not have specific information about the victims who will testify or the content of their testimony, nor will she opine on specific details of their torture. Dr. Akinsulure-Smith's testimony will not serve to vouch for the accuracy of these witnesses' testimony or whether their experiences constitute torture, but will give the jury a relevant understanding of trauma in order for the jurors to make their own decisions regarding witness credibility and the relevant evidence.

In light of the foregoing, the defendant's motion to exclude Dr. Akinsulure-Smith's testimony should be denied.

Respectfully submitted this 27th day of August, 2024.

                    MATTHEW T. KIRSCH
                    Acting United States Attorney

                    *s/ Melissa Hindman*
                    Assistant U.S. Attorney
                    U.S. Attorney's Office
                    1801 California St., Ste. 1600
                    Denver, CO 80202

Telephone: 303-454-0100
Fax: 303-454-0401
E-mail: Melissa.Hindman@usdoj.gov
Attorney for the Government

*s/ Laura Cramer-Babycz*
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Phone:  (303) 454-0100
Fax: 303-454-0401
Email: Laura.Cramer-Babycz@usdoj.gov
Attorney for the Government

NICOLE M. ARGENTIERI
Principal Deputy Assistant Attorney General
Head of the Criminal Division

By: *s/Christina Giffin*
Christina Giffin
District of Columbia Bar No. 476229
Deputy Chief
United States Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 1200
Washington, D.C. 20530
Telephone: (202) 514-5792
Facsimile: (202) 305-4624
Email: Christina.Giffin@usdoj.gov

By: *s/Marie Zisa*
Marie Zisa
New York Bar No. 5663265
Trial Attorney
United States Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 1200
Washington, D.C. 20530
Telephone: (202) 305-3731
Facsimile: (202) 305-4624
Email: Marie.Zisa@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of August, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification to all counsel of record.

*s/Amy McDaniel*
Legal Assistant
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100