IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

MICHAEL SANG CORREA,

        Defendant.

_____

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT [DOC. #158]**
_____

      The government urges a broad reading of 18 U.S.C. § 3286 on the view that Congress could have limited its reach by simply adding a more specific cross-reference to 18 U.S.C. § 2332b(g)(5)'s conjunctive definition of a "federal crime of terrorism."[1] But what Congress might have done is a flawed premise: what Congress did do was close a perceived loophole identified in the aftermath of the terrorist attacks against the United States on September 11, 2001. That perceived loophole was the limitations placed on the United States Government's ability to prosecute terrorists.

      The government attempts to resurrect the argument the Supreme Court rejected in *Fischer* to suggest the Court twist Congress's effort to close the terrorism loophole. The government wants the Court to create an extended statute of limitations for certain general, non-capital, offenses based on a view that the Supreme Court did not *really* mean what they held in *Fischer*. The Supreme Court, however, warned of the improbable

---

[1] Government's Response Brief, Doc. #158, p. 5-7.

consequences that can result from untethering subsections within a criminal statute: the government could mold the statute to serve whatever purpose it wants, beyond Congress' intentions in passing the law.[2]

The government is asking this Court, in essence, to do exactly what it tried, and failed, to get the Supreme Court to do in *Fischer*, which is to untether § 2332b(g)(5)'s subsections, read only half of the conjunctive definition of a "federal crime of terrorism," to mold § 3286 broad enough that it no longer covers "certain terrorism offenses," and instead permit its prosecution of Mr. Correa. The Supreme Court rejected the government's attempt to interpret § 1512(c) as broad as it wanted to prosecute January 6th insurrectionists, and so too should this Court reject the government's attempt to interpret § 3286 broad enough to capture Mr. Correa's alleged non-terrorism offenses.

The government's response cites one case in support of its expansive view of § 3286.[3] The government relies on a case that, contrary to its argument, proves the point Mr. Correa makes. It involves the arrest and prosecution of an al Qaeda terrorist accused of playing a role in the terrorist attacks against the United States on September 11, 2001, which, in total, claimed the lives of close to 3,000 United States citizens. This defendant, and the 9/11 terrorist act (meant as retaliation against the United States and intended to influence its policy abroad), is *exactly* what Congress had in mind when they amended § 2332b(g)(5) and enacted § 3286.

---

[2] *Fischer v. United States*, 144 S.Ct. 2176 (2024).
[3] The government citation to the extradition of an alleged Bosnian war criminal from the United States back to Bosnia and Herzegovina is of no relevance to the issue here. Mr. Nezirovic was not charged with criminal offenses by the United States government.

2

In *United States v. Ghayth*, the defendant was charged with Conspiracy to Kill United States Nationals, in violation of 18 U.S.C. § 2332b(1).[4] The conspiracy included, among other things, the terrorist attacks against the United States by al Qaeda on September 11, 2001. Given this, it is unremarkable that the district court found that the government easily refuted the defendant's statute of limitations argument. The sole purpose behind § 3286's enactment was to specifically remove any limitation that would prevent the United States Government from tracking down, arresting, and prosecuting the 9/11 terrorists like Ghayth:

> In his speech to Congress, President Bush said that Osama bin Laden's terrorist group, al Qaeda, is to terror what the mafia is to organized crime. However, our current laws make it easier to prosecute members of organized crime than to crack down on terrorists who can kill thousands of Americans in a single day. The same is true of drug traffickers and individuals involved in espionage our laws treat these criminals and those who aid and abet them more severely than terrorists.
>
> The statute of limitations on prosecuting the types of crimes that are likely to be committed by terrorists, for example, is five to eight years. The crimes of murder and espionage, in contrast, have no statute of limitations. *We would eliminate the statute of limitations on terrorist acts.*[5]

As the Supreme Court did in *Fischer*, this Court should reject the government's broad interpretation of § 3286 and, in doing so, give effect to every clause and word of 18 U.S.C. § 2332b(g)(5)'s conjunctive definition of a "federal crime of terrorism." Section 2332b(g)(5)(B) cannot be read in isolation. It is conjoined with § 2332b(g)(5)(A) for a reason. It is what makes those crimes enumerated in § 2332b(g)(5)(B) federal

---

[4] *United States v. Ghayth*, 2013 WL 12226036 (S.D.N.Y. Nov. 26, 2013).
[5] Attorney General John Ashcroft's testimony to the House Judiciary Committee on September 24, 2001, in support of the Bush Administration's draft Anti-Terrorism Act of 2001, discussing Section 301, entitled "No Statute of Limitations for Prosecuting Terrorism Offenses."  2001 WL 34113841, p. 12 & 64-65.

crimes of terrorism, thus falling under a statute meant to extend the limitations for only certain *terrorism* offenses. Without § 2332b(g)(5)(A), the predicate offenses in § 2332b(g)(5)(B) are not "terrorism offenses" and, as the title demands, do not fall within the unlimited statute of limitations Congress intended to establish in § 3286(b).[6] Considering the history of the provision and the clear intent of Congress to only extend the statute of limitations for "certain terrorism offenses," § 2332b(g)(5)(B) cannot be read without § 2332b(g)(5)(A).

### I. The government's response mistakes the importance of *Fischer v. United States*

The government asserts that *Fischer* "did not alter well-settled principles of statutory interpretation" and, as such, this Court should reject the defendant's arguments to the contrary.[7]  Instead, the government asserts the "plain" and "unambiguous" language of § 3286 should be the beginning and the end of this Court's analysis.[8]  Their argument, however, is misleading.  The question here is not whether § 3286 is ambiguous but, instead, whether its cross-reference to § 2332b(g)(5)(B) should be limited in scope by § 2332b(g)(5)(A).  The Supreme Court in *Fischer* outlines for this Court the procedure for determining the scope of a criminal statute.

---

[6] *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998) ("In this instance the [§ 3286]'s title does not reflect careless, or mistaken, drafting, for the title is reinforced by a legislative history that speaks about, and only about, the creation of" a statute of limitations to allow the prosecution of terrorists.)
[7] Government's Response, Doc. #158, p. 9-11.
[8] *Id.* at p. 3.

The holding in *Fischer* did not hinge upon any finding by the Supreme Court that the statute in question was ambiguous or that the statutory text was anything but plain.[9] The government's Response notes that and, instead, attempts to argue that the statute's ambiguity must have been implicit in the *Fischer* opinion based on the Supreme Court's reference to legislative history and Congressional purpose and intent.[10] This is not so.

The specific text of § 1512(c)(2) was not disputed by the parties in *Fischer*. In fact, as the government's response even notes, the parties in *Fischer* agreed that the purpose of the "otherwise" clause was to cover some set of matters not specifically contemplated by the preceding subsection, (c)(1).[11] Thus, the controversy in *Fischer* was not whether the statutory language was ambiguous or not; instead, the controversy concerned the scope of § 1512(c)(2).[12]

In resolving a dispute as to the scope of a criminal statute, the Supreme Court instructs that a court must give effect, if possible, to every clause and word of the statute.[13] To that end, a court must consider both "the specific context" in which the subsection appears and "the broader context of the statute as a whole."[14] And, as part of the Supreme Court's analysis of both the specific and broader context of § 1512(c)(2),

---

[9] Notably, the *Fischer* majority opinion is devoid of any discussion as to ambiguity of the statute in question, despite the government there, as here, arguing that there was no textual basis for departing from Section 1512(c)'s "plain language." Brief for United States, *Fischer v. United States*, 2024 WL 923819 (2024).
[10] *Id*. at 10.
[11] Government's Response, Doc. #158, p. 9.
[12] *Fischer v. United States*, 144 S.Ct. at 2182-83.
[13] *Id*.
[14] *Id*.

5

*Fischer* turned to the history of the provision to confirm their understanding of Congressional purpose and intent.[15]

Ultimately, *Fischer* rejected the government's textual based arguments and, instead, held, based on their review of both the specific and broader context of § 1512, that it "makes sense to read subsection (c)(2) as limited by (c)(1) in light of the history of the provision."[16]  Notably, in concurring with the majority opinion in *Fischer*, Justice Jackson noted that "the upshot is that, when interpreting the scope of a particular statute or rule, our assessment of the words that the drafters used informs our understanding of what the rule was designed to do.  Discerning the rule's purpose is critical when a court is called upon to interpret the provision."[17]

## II.      *Fischer's* application here is straightforward

As in *Fischer*, the controversy here concerns the breadth of § 3286(b) through its reference to § 2332b(g)(5)(B).  The government, on one hand, argues that this Court should read § 3286(b)'s reference to § 2332(g)(5)(B) in isolation and without the limitations Congress clearly placed on the list of predicate offenses in § 2332b(g)(5)(A).  An overly broad and expansive reading that would extend the statute of limitations, not just for "certain terrorism offenses," but also for many general non-capital offenses that would not qualify as a "terrorism" offense.

Mr. Correa, on the other hand, urges this Court to read § 2332b(g)(5)(B) as limited by § 2332(g)(5)(A).  Such a reading makes sense considering the specific context of

---

[15] *Id.* at 2186 (finding that it makes sense to read subsection (c)(2) as limited by (c)(1) considering the history of the provision).
[16] *Id*.
[17] *Id*. at 2192.

6

§ 2332b(g)(5)(B), being the second half of a conjunctive statutory definition, the broader context of the statute, being one tool of many that Congress provided the United States Government in the USA PATRIOT Act to combat terrorism, and the history of the provision's enactment.

1. *The specific context of § 2332b(g)(5)(B)*

Section 2332b(g)(5)(B) is a list of offenses that Congress, while drafting and debating the final version of the USA PATRIOT Act, identified as crimes that may be considered terrorism predicates – the government's response concedes as much.[18] Yet, from there, the government jumps to a questionable conclusion – that this list of predicate offenses must mean that the extended statute of limitations applies to the predicate offenses listed in § 2332b(g)(5)(B) without the limitation found in § 2332b(g)(5)(A).[19]

A <u>predicate</u> offense necessarily is only <u>one</u> component of a larger crime. Here, the larger crime being a "federal crime of terrorism." The predicate offenses listed in § 2332b(g)(5)(B) are not, by themselves, a "federal crime[s] of terrorism." The predicate offenses only become a "federal crime of terrorism" if § 2332b(g)(5)(A)'s limitation is met; that is, the commission of the predicate offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."[20]

Untethering the predicate offenses in subsection (g)(5)(B) from the limitations Congress placed upon them in (g)(5)(A) would have improbable consequences here. The predicate offenses, not terrorism offenses on their own, would nevertheless have their

---

[18] Government's Response, Doc. #158, p. 11-12.
[19] *Id*.
[20] § 2332b(g)(5)(A).

statute of limitations extended or, in some cases, eliminated all together under a criminal statute entitled "Extension of statute of limitations for certain terrorism offenses."

The government's response makes light of this issue by simply noting that the drunken airline passenger who was charged with a predicate terrorism offense for suggesting that a plane's roof will blow if he does not urinate soon, was only looking at an extended statute of limitations of eight years.[21]  Notably, the government does not address the fact that this is clearly not a terrorism offense and, yet, the statute of limitations would be extended, per the government's expansive view, under the statute purporting to extend the statute of limitations for only "certain terrorism offenses."  That is the real problem *Grzeganek* represents.

The list of predicate offenses in § 2332b(g)(5)(B) is just that: a list of general offenses that might form one component of the larger crime of terrorism.  But without the "context" or "circumstances under which they were committed"[22] set forth by Congress in § 2332b(g)(5)(A), they themselves are not terrorism offenses and, as such, are not the "certain terrorism offenses" that Congress intended to extend or eliminate the statute of limitations under § 3286.

> 2. It makes sense to read subsection (g)(5)(B) as limited by subsection (g)(5)(A), considering the history of both §§ 2332b(g)(5) and 3286.

Prior to the USA PATRIOT Act, § 3282, as supplemented by the prior version of § 3286, carried either a five-year or eight-year statute of limitations for many of the offenses that Congress later determined may be predicate terrorism offenses.  Then

---

[21] Government's Response, Doc. #158, at p. 8.
[22] Senator Leahy, 147 Cong. Rec. S10990-02, S10996-97.

came September 11, 2001. In the aftermath of those terrorist attacks, Congress quickly assembled an omnibus bill that would provide the United States Government the tools necessary to intercept, obstruct, and ultimately prosecute acts of terrorism, known as the USA PATRIOT Act of 2001.

However, prior to the passage of the USA PATRIOT Act, the Bush Administration proposed their own legislation entitled the "Anti-Terrorism Act of 2001." And as noted above, when testifying in defense of this proposed legislation, Attorney General Ashcroft noted the Bush Administration's desire to "eliminate the statute of limitations on terrorist acts."[23] After Attorney General Ashcroft's testimony, Rep. Spencer Bachus provided a section-by-section analysis of the Bush Administration's proposed legislation, which included "Section 301. <u>No Statute of Limitations For Prosecuting Terrorism Offenses</u>."[24] Rep. Bachus described this section to Congress as follows:

> This section amends 18 U.S.C. § 3286 to provide that terrorism offenses may be prosecuted without limitation of time. This will make it possible to prosecute the perpetrators of terrorist acts whenever they are identified and apprehended.
>
> The section expressly provides that it is applicable to offenses committed before the date of enactment of the statute, as well as those committed thereafter. This retroactivity provision ensures that no limitation period will bar the prosecution of crimes committed in connection with the September 11, 2001, terrorist attacks.[25]

Ultimately, as briefed fully in Defendant's Motion to Dismiss the Indictment, Doc. #155, pp. 4-6, Congress, in passing the USA PATRIOT Act, rejected some of the more severe amendments the Bush Administration included in their proposed

---

[23] 2001 WL 34113841, p. 12
[24] 2001 WL 34113841, p. 64.
[25] *Id*.

"Anti-Terrorism Act of 2001," to include the administration's definition of a federal crime of terrorism that included "a laundry list of more than 40 federal crimes…regardless of the circumstances under which they were committed."

The government misplaces their focus on the former, the paring back of the sheer number of predicate terrorism offenses proposed by the Bush Administration.[26]  It is the latter rejection by Congress that is important here.  Not only did the final version of the USA PATRIOT Act pare down the number of proposed predicate terrorism offenses, but Congress also made their list of offenses predicated upon the circumstances under which they were committed, which is the limitation placed on subsection (g)(5)(B) by subsection (g)(5)(A).

Given this history, this Court should reject the government's request here – that § 2332b(g)(5)(B) be untethered from subsection (g)(5)(A).  Tethering the two subsections, especially considering the conjunctive nature of the statute, makes sense given the history of the provisions.  Given the singular focus of Congress in the months following the 9/11 attacks, the expansive reading of the statute proposed by the government makes little sense.  Congress was focused on providing the government the tools necessary to intercept, obstruct, and, ultimately, prosecute terrorists – specifically the 9/11 terrorists.  Congress was not looking to modify the general statute of limitations for non-terrorism offenses.

---

[26] Government's Response, Doc. #158, pp. 11-12.

### 3. The broader context

The government suggests that the "broader context" only involves the survey of other statutory provisions, despite acknowledging that the Supreme Court reviewed the legislative history in *Fischer* as part of the "specific" and "broader" context of § 1512(c)(2).[27]  Even if this Court were to adopt this narrower view, the "broader context" of the statute still supports Mr. Correa's limited reading of §§ 2332b(g)(5)(B) and 3286.

As noted above, both §§ 2332b(g)(5) and 3286 were amended by the USA PATRIOT Act of 2001, an omnibus statute with the sole purpose of "Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism."  The USA PATRIOT Act amended the United States criminal code in many respects.  However, these numerous amendments had one thing in common – terrorism.  Whether it be laws to prevent, detect, and prosecute international money laundering and financing that supports terrorism; or additional measures to prevent the use of the financial system of the United States for personal gain by corrupt foreign officials; or laws to help facilitate repatriation of stolen assets to the citizens of countries to whom such assets belong; or extending or eliminating the statute of limitations for "certain terrorism offenses," they all had a single focus – combating terrorism.

Congress did not intend to simply extend or eliminate the statute of limitations for general non-capital offenses when they modified the definition of a "federal crime of terrorism." Instead, Congress clearly intended to extend or eliminate the statute of limitations for only certain terrorism offenses, which they defined in § 2332b(g)(5). When

---

[27] Government's Response, Doc. #158, p. 11.

11

seen in this "broader context," the government's expansive reading becomes increasingly suspect.

### III. Mr. Correa's offenses are not subject to the extended statute of limitations for "certain terrorism offenses" found at § 3286.

"Hewing closely to Congress's will, as embodied in the statute that it wrote, is especially important when construing laws like this one, which implicate the possible imposition of punitive sanctions."[28] Given that §§ 2332b(g)(5) and 3286 were specifically amended to address the terrorist attacks against our country on September 11, 2001, it is unlikely that Congress responded with such an unfocused and grossly incommensurate patch – a patch extending or eliminating the statute of limitations for non-terrorism offenses.

As such, this Court should decline the government's unreasonably expansive interpretation of the statutes at issue here as an interpretation that would untether conjunctive subsections and result in improbable consequences. The government's expansive interpretation would result in the extension of the statute of limitations for general non-capital offenses, not, as Congress intended, for only "certain crimes of terrorism." The government's interpretation is inconsistent with the context from which the statute arose – and should be rejected by this Court.

---

[28] *Fischer v. United States*, 144 S.Ct. at 2191(Jackson, J., concurring).

12

The prosecution of Mr. Correa is barred by the limitations set forth in § 3282. Accordingly, this Court is required to dismiss his Indictment.

        Respectfully submitted,

        VIRGINIA L. GRADY
        Federal Public Defender


        */s/ Matthew K. Belcher*
        MATTHEW K. BELCHER
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, Colorado 80202
        Telephone: (303) 294-7002
        FAX: (303) 294-1192
        Email: Matthew_Belcher@fd.org
        Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on August 29, 2024, I electronically filed the foregoing **Defendant's Reply to the Government's Response [Doc. #158]** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Melissa Erin Hindman, Assistant U.S. Attorney
Email:  melissa.hindman@usdoj.gov

Laura Cramer-Babycz, Assistant U.S. Attorney
Email:  Laura.Cramer-Babycz@usdoj.gov

Erin S. Cox, Assistant U.S. Attorney
Email:  Erin.Cox@usdoj.og

Marie S. Zisa, Assistant U.S. Attorney
Email: marie.zisa@usdoj.gov

Christina P. Giffin, Deputy Chief
Email:  Christina.Giffin@usdoj.gov

and I will mail or serve the document to the following non-CM/ECF participant in the manner indicated:

Michael Sang Correa, Defendant (via mail)

*/s/ Matthew K. Belcher*
MATTHEW K. BELCHER
Assistant Federal Public Defender