IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Criminal Action No. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL SANG CORREA,

    Defendant.

## ORDER DENYING MOTION TO DISMISS

This matter is before the Court on Defendant Michael Sang Correa's Motion to Dismiss ("MTD") the Indictment. (Doc. # 162.) For the following reasons, the Court denies the Motion.

### I.    BACKGROUND

The Court incorporates its previous recitation of the facts and procedural history of this case as stated in its Order Denying Defendant's Motion to Dismiss the Indictment. (Doc. # 105 at 1–3.) In short, the Government has charged Mr. Correa with torture and conspiracy to commit torture for acts allegedly committed by Mr. Correa and unindicted coconspirators following a failed coup d'état in The Gambia in 2006, while that country was ruled by former-President Yahya Jammeh. (*Id.*; Doc. # 1.) A ten-day jury trial in this case is scheduled to begin on September 16, 2024. (Doc. # 94 at 3.)

In his recent filings, Mr. Correa discusses his intention to present a duress or coercion defense. *See* (Doc. # 153 at 4.) In support of this defense, Mr. Correa intends to call (1) Momodou Hydara, who was the Assistant Director of the Counter Espionage Unit of the Gambian National Intelligence Agency ("NIA") during the failed 2006 attempt, and (2) Alieu Jeng, a member of "the Junglers," a secretive group within the Gambian Armed Forces who answered to President Jammeh and to which the Government alleges Mr. Correa also belongs. (Doc. # 162 at 1–2); *see also* (Doc. # 1 at ¶¶ 12, 14; Doc. # 101 at 2; Doc. # 168 at 4.) Both Mr. Hydara and Mr. Jeng are willing to testify.[1] (Doc. # 162 at 6.)

The Government's *James* materials identify Mr. Hydara as a coconspirator and a member of an NIA panel that "would interrogate [] detainees, questioning them about their role in the attempted coup, often demanding that the detainees sign confessions as to those roles, and threatening witnesses if they failed to comply." (Doc. # 138 at 9; Doc. # 138-1.) The Government plans to elicit testimony, pursuant to Federal Rule of Evidence 801(d)(2)(E) and the Court's finding of provisional admissibility (Doc. # 143), that Mr. Hydara explicitly or implicitly threatened multiple witness victims with torture during their interrogations and before or after torture sessions. (Doc. # 138-1 at 1–2, 6, 8–10.) In his testimony under oath before The Gambia's Truth, Reconciliation, and Reparations Commission ("TRRC"), Mr. Hydara admitted being involved in the NIA interrogations of the suspected plotters of the failed March 2006 coup and to having

---

[1] "The government has no power to compel the presence of a foreign national residing outside the United States." *United States v. Theresius Filippi*, 918 F.2d 244, 247 (10th Cir. 1990); *see also id.* at 246 n.2 (citing Fed. R. Crim. P. 17(e)(2); 28 U.S.C. § 1783.)

knowledge that those individuals were tortured. (Doc. # 168-1 at 19–20, 35–36.) However, Mr. Hydara testified that he did not engage in the torture itself, rather the Junglers were responsible for the torture. (*Id.* at 23, 30–31, 33.)

Mr. Jeng also testified under oath before the TRRC during which he confirmed that he had been a Jungler for a number of years. (Doc. # 168-3 at 22.) Mr. Jeng also testified that in the aftermath of the failed March 2006 coup, he "collected people"—including one of the victims identified in the indictment—"from Mile 2 [Prison]" and transported them to NIA headquarters where they were tortured. (*Id.* at 19–21.) Mr. Jeng testified that he did not torture people but admitted to "fetch[ing] sticks for other Junglers to use as "tools" or "instruments" in the torture. (*Id.* at 19.)

Counsel for Mr. Correa asserts that the process to request the funding and Special Benefits Parole necessary to secure Mr. Hydara and Mr. Jeng's travel to the United States "is almost complete." (Doc. # 162 at 2.) One month before the scheduled first day of trial, counsel for Mr. Correa contacted the Government to request immunity for Mr. Hydara and Mr. Jeng to facilitate their testimony. (*Id.*) At that time, the Government responded that it was "not offering immunity to witnesses." (*Id.*)

Immediately following the Final Trial Preparation Conference on August 23, 2024, counsel for Mr. Correa again contacted the Government regarding Mr. Hydara and Mr. Jeng. (*Id.* at 3.) Counsel told the Government that Mr. Hydara and Mr. Jeng are "critical to the defense, and, without them, [he] would be severely limited in [his] ability of effectively put on a defense." Counsel indicated that "the only obstacle to [Mr. Hydara and Mr. Jeng] coming to the United States to testify is the threat of arrest/prosecution."

(*Id.*) Further, counsel clarified that he was "only looking for protection for the week that they are here – not blanket immunity from ever being prosecuted by the United States." (*Id.*) Five days later—on August 28, 2024, the Government told Mr. Correa's counsel that it is unable to provide assurances that Mr. Hydara and Mr. Jeng would not be arrested on criminal charges during the week they are in the United States to testify in Mr. Correa's trial. (*Id.*) The Government also speculated, based on its understanding of Mr. Hydara and Mr. Jeng's former roles within the Jammeh government, that both men would eventually refuse to testify absent a provision of use immunity. (*Id.*) Finally, the Government stated that it "would not provide such immunity, and [does] not see a valid basis for [Mr. Correa] to ask the Court to compel such immunity." (*Id.* (citing *United States v. LaHue*, 261 F.3d 993, 1014–15 (10th Cir. 2001).)

The next day, August 29, 2024, Mr. Correa filed the instant MTD in which he alleges that "the government's failure to provide assurance that two of Mr. Correa's material witnesses will not be arrested when they arrive in the United States to testify on his behalf has all but eliminated his right to present a defense." (Docs. # 162 at 1.) The Court ordered the Government to respond by September 6, 2024 (Doc. # 163), which it did. (Docs. # 168.)

## II.  ANALYSIS

### A.  RELEVANT LAW: RIGHT TO COMPULSORY PROCESS

As the United States Court of Appeals for the Tenth Circuit has explained

> A criminal defendant's right to present a defense is essential to a fair trial. *United States v. Valenzuela–Bernal*, 458 U.S. 858, 875, 102 S. Ct. 3440, 73 L. Ed.2d 1193 (1982) (O'Connor, J., concurring). The Fifth (or Fourteenth if a state is involved) and Sixth Amendments concomitantly provide a

4

> criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses. *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S. Ct. 1920, 18 L. Ed.2d 1019 (1967). The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause, *see Taylor v. Illinois*, 484 U.S. 400, 407–408, 108 S. Ct. 646, 98 L. Ed.2d 798 (1988), "establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S. Ct. 989, 94 L. Ed.2d 40 (1987). Likewise, "the necessary ingredients of the Fifth and Fourteenth Amendments' guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony." *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S. Ct. 2704, 97 L. Ed.2d 37 (1987).

*United States v. Serrano*, 406 F.3d 1208, 1214–15 (10th Cir. 2005) (alterations incorporated). This right is not absolute and must sometimes "bow to accommodate other legitimate interest in the criminal trial process." *Id.* at 1215 (quoting *Rock*, 483 U.S. at 55). For example, multiple "circuit courts have held a defendant's right to present a defense does not include the right to compel a witness to waive his Fifth Amendment privilege against self incrimination." *Id.* (collecting cases).

At the same time, "the government cannot substantially interfere with a defense witness's decision to testify." *Id.* For example, in *Webb v. Texas*, 409 U.S. 95, 97–98 (1972), the Supreme Court of the United States held that a trial judge violated the defendant's due process rights when his "'lengthy and intimidating warning' and 'threatening remarks' effectively caused the defendant's only witness not to testify." *Serrano*, 406 F.3d at 1215.

Congress sought "a rational accommodation between the imperatives of the [Fifth Amendment] privilege and the legitimate demands of government to compel citizens to testify" through the Immunity of Witnesses Act, 18 U.S.C. §§ 6001–6005. *See*

5

*generally Kastigar v. United States*, 406 U.S. 441, 446, 92 S. Ct. 1653, 32 L. Ed.2d 212 (1972). The Immunity of Witnesses Act conferred upon the Attorney General statutory authority to grant use immunity to witnesses to obtain their testimony at trial. *Id.* "[C]ourts have no inherent authority to grant a witness use immunity." *LaHue*, 261 F.3d at 1014. Rather, "[t]he power to apply for immunity . . . is the sole prerogative of the government being confined to the United States Attorney and his superior officers" *Id.* (quoting *United States v, Graham*, 548 F.2d 1302, 1314 (8th Cir. 1977) (internal quotation marks and citation omitted)).

Most circuit courts have concluded that, in certain circumstances, selective use of immunity by the United States may violate the due process rights of a defendant. *See, e.g.*, *United States v. Meda*, 812 F.3d 502, 518 (6th Cir. 2015); *United States v, Chapman*, 765 F.3d 720, 731–32 (7th Cir. 2014); *United States v, Quinn*, 728 F.3d 243, 258–59 (3d Cir. 2013); *United States v. Straub*, 538 F.3d 1147, 1158 (9th Cir. 2008). The Tenth Circuit has not explicitly adopted a test for determining when refusal by the Government to grant immunity to a defense witness reaches the level of "substantial interference" resulting in a due process violation. However, the Tenth Circuit has "left open the possibility 'that where the prosecutor's denial of immunity is a deliberate attempt to distort the fact finding process, a court could force the government to choose between conferring immunity or suffering an acquittal.'" *LaHue*, 261 F.3d 993, 1014 (quoting *United States v. Hunter*, 672 F.2d 815, 828 (10th Cir. 1982)). Additionally, the Tenth Circuit has affirmed district court cases that use this standard. *See United States*

*v. Baca*, 447 F. Supp. 3d 1149, 1221 (D.N.M. 2020) (collecting cases), *aff'd sub nom. United States v. Cordova*, 25 F.4th 817 (10th Cir. 2022).

The Tenth Circuit has implied that the presumption of prosecutor regularity is applicable to selective immunity claims. *See Serrano*, 406 F.3d at 1218 (presuming, in the absence of clear evidence that the United States attorney committed misconduct, that "the United States attorney's office has properly discharged its official duties."). Accordingly, a defendant seeking to demonstrate that a prosecutor denied immunity to a witness in "a deliberate attempt to distort the fact finding process" must "provide factual support" for his contention. *United States v. Apperson*, 441 F.3d 1162, 1203–04 (10th Cir. 2006); *Serrano*, 406 F.3d at 1218.

**B.      APPLICATION**

The Court will concludes that Mr. Correa has failed to allege—let alone point to clear evidence—that the United States attorneys prosecuting his case are denying immunity to Mr. Hydara and Mr. Jeng in "a deliberate attempt to distort the fact finding process," or have otherwise engaged in misconduct. *Apperson*, 441 F.3d at 1203–04; *Serrano*, 406 F.3d at 1218.

Given the evidence the Government possesses—including Mr. Hydara and Mr. Jeng's testimony before the TRRC (Docs. ## 168-1; 168-2; 168-3), and the statements attributed to Mr. Hydara contained in the Government's *James* log (Doc. # 138-1)—the Court does not doubt the Government's assertion that these two men could potentially be the target of criminal prosecution should they ever come within the jurisdiction of United States' courts. (Doc. # 168 at 16.) Multiple circuit courts have concluded that it is

7

reasonable for prosecutors to "refuse to grant immunity where a witness is a potential target of criminal prosecution." *United States v. Rosen*, 716 F.3d 691, 704 (2d Cir. 2013), *abrogated on other grounds by McDonnell v. United States*, 579 U.S. 550 (2016); *see also Turkish*, 623 F.2d at 778 ("[W]e think trial judges should summarily reject claims for defense witness immunity whenever the witness for whom immunity is sought is an actual or potential target of prosecution."); *United States v. Rodriguez-Becerra*, 510 F. App'x 655, 657 (9th Cir. 2013) (rejecting argument that district court erred by "failing to compel the government to grant the unindicted co-conspirator use immunity" because government "neither intentionally caused the unindicted co-conspirator to plead the Fifth Amendment at trial nor granted use immunity to its own witnesses only to deny use immunity to the unindicted co-conspirator").

Given the lack of evidence of "a deliberate attempt to distort the fact finding process" or other prosecutorial misconduct, the Court concludes that Mr. Correa has not met his substantial burden and this Court is not in the position to "force the government to choose between conferring immunity or suffering an acquittal." *Hunter*, 672 F.2d at 828. Accordingly, the Court will deny Mr. Correa's Motion (Doc. # 162) to Dismiss the Indictment.

### III.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant Michael Sang Correa's Motion to Dismiss the Indictment (Doc. # 162) is DENIED.

DATED: September 10, 2024

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge