IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MICHAEL SANG CORREA,

      Defendant.
_____

**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**
_____

Michael Sang Correa, through undersigned counsel, submits the following objections to the Presentence Investigation Report (PSR) filed with this Court on July 18, 2025 (Doc. #234).

**Objection No. 1:**

Mr. Correa objects to the "Release Status" paragraph on page two of the PSR. Specifically, Mr. Correa objects to probation's mistaken recommendation to the Bureau of Prisons as to the amount of presentence confinement credit he should receive pursuant to 18 U.S.C. § 3585. As indicated in footnote 1 on page 2 of the PSR, probation calculated their recommended presentence confinement credit from the date of the Indictment (June 2, 2020), not the date on which Mr. Correa was arrested for the offense on September 17, 2019. This calculation deprives Mr. Correa of approximately nine months of presentence confinement that is not being credited against any other sentence. The correct calculation of presentence confinement credit is 2,166 days or 5 years, 11 months, and 5 days.

**Objection No. 2:**

Mr. Correa objects to ¶ 88 of the PSR. Specifically, Mr. Correa objects to probation's determination that a two-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) is inappropriate here because "[t]he defendant put the government to its burden of proving him guilty beyond a reasonable doubt." Probation has applied the wrong standard of review.

Section 3E1.1, application note 2, plainly states that conviction by trial does not automatically preclude Mr. Correa from consideration for a two-level reduction for acceptance of responsibility. While rare, the Commission notes that a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial when, among other things, the defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.* to make a constitutional challenge to a statute or challenge to the applicability of a statute to his conduct). That is exactly the scenario here.

Mr. Correa proceeded to trial to not only preserve his constitutional challenges to the statute of conviction but also to challenge the applicability of the statute of conviction to his conduct; that is, to argue that he was legally justified in committing the alleged offenses. Mr. Correa neither denied the *actus reus* of the alleged crimes nor did he present any testimony or argument to the jury arguing against factual guilt. Instead, Mr. Correa argued that he was legally excused from liability due to unlawful coercion and/or duress.

Given the above, Mr. Correa submits that a two-level reduction for acceptance of responsibility pursuant to § 3E1.1(a), application note 5, is appropriate here.

**Objection No. 3:**

Mr. Correa objects to ¶ 90 of the PSR. Specifically, Mr. Correa objects to probation's erroneous application of § 2A4.1 (Kidnapping) to determine his applicable guidelines range. Here, based on the conduct alleged in the Indictment, the most appropriate guideline section is § 2A2.2 (Aggravated Assault).

To determine the most appropriate guideline, the Tenth Circuit prescribes a three-step process:

1. Identifying the charge from the Indictment and jury instructions;
2. Finding the substantive offense in the guidelines' statutory index; and
3. Finding the applicable guidelines range.

*United States v. Kupfer*, 797 F.3d 1233 (10th Cir. 2015). Here, the Indictment alleges a violation of 18 U.S.C. § 2340A. Turning to the statutory index in Appendix A of the 2005 U.S. Sentencing Guidelines Manual, there are five guideline sections referenced by the Commission – § 2A1.1, § 2A1.2, § 2A2.1, § 2A2.2, and § 2A1.4. The options provided by the Commission make it clear that they viewed offenses under 18 U.S.C. § 2340A in three main categories: (1) torture that results in death; (2) torture that occurs as part of a kidnapping offense; and (3) torture by itself.

When more than one guideline section is listed in the statutory index, the guidelines instruct the court to "use the guideline most appropriate for the offense conduct charged in the count(s) of which the defendant was convicted." *Id*. (citing U.S. Sentencing Guidelines Manual, app. A). And, when determining the most appropriate guideline section to apply, the Guidelines Manual instructs that the sentencing court must select the most appropriate guideline based on the offense charged in the indictment, not the

3

court's or any other parties' perception of the facts of the case presented at trial. *Id*. at 1245-1246.

Here, based on the conduct alleged in the Indictment, the most appropriate guideline section to apply to Mr. Correa's offenses of conviction is § 2A2.2, "Aggravated Assault."

### A. Sections 2A1.1, 2A1.2, and 2A2.1 Involve Murder:

The first three sections listed by the Commission in the statutory index should quickly be dismissed by this Court. Sections 2A1.1, 2A1.2, and 2A2.1 involve actual or attempted murder. In contrast, the offenses alleged in Mr. Correa's Indictment do not involve either the actual or the attempted murder of any of the named victims. As such, none of these three guideline sections would be the appropriate, let alone the most appropriate, guideline section to apply here.

### B. Section 2A4.1 Similarly Involves Conduct Not Alleged in the Indictment:

Where more than one guideline section is referenced for a particular statute, the court must undertake a detailed comparison between the offense conduct and the conduct punishable under each guideline to determine which is most appropriate. *United States v. Neilson*, 721 F.3d 1185, 1187-88 (10th Cir. 2013). In other words, this Court must determine whether Mr. Correa's conduct, as alleged in the Indictment, is "more akin to" the conduct covered by §§ 2A2.2 or 2A4.1. *Id*.

Section 2A4.1 applies to kidnapping offenses, such as offenses prosecuted under 18 U.S.C. § 1201, which makes it a crime to "unlawfully seize, confine, inveigle, decoy, kidnap, abduct, or carry away and hold for ransom or reward or otherwise, any person."

Similarly, like an offense under 18 U.S.C. § 1201, the majority of the other criminal statutes referenced by the Commission under § 2A4.1 involve kidnapping:[1]

- *§ 115(b)(2)* "A <u>kidnapping</u>, attempted <u>kidnapping</u>, or conspiracy to <u>kidnap</u> in violation of this section shall be punished as provided in section 1201 of this title…"

- *§ 351(b)* "Whoever <u>kidnaps</u> any individual designated in subsection (a) of this section shall be punished by imprisonment for any term of years or for life or by death…"

- *§ 351(d)* "If two or more persons conspire to kill or <u>kidnap</u> any individual designated in subsection (a) of this section and one or more of such persons do any act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life or by death…"

- *§ 1751(b)* "Whoever <u>kidnaps</u> any individual designated in subsection (a) of this section shall be punished by imprisonment for any term of years or for life or by death…"

Not only do all of the above statutory references refer to kidnapping offenses, but they also modify the statutory punishment for the offense that mirrors the statutory punishment for federal kidnapping under 18 U.S.C. § 1201, which is any term of imprisonment up to life or death. In contrast, each of Mr. Correa's counts of conviction not only are silent as they relate to kidnapping but also proscribe a much lower statutory range of punishment of 0 to 20 years.

---

[1] Section 2A4.1, Commentary "Statutory Provisions," 2005 U.S. Sentencing Guidelines Manual.

Even more significantly, if the alleged offense under §§ 115, 351, and 1751 involved allegations of assault, not kidnapping, and not murder, then the Commission instructs that the most appropriate guideline section would be § 2A2.2, "Aggravated Assault." For instance, a violation of 18 U.S.C. § 115(a), (b)(1) (assault causing bodily injury) is referred to § 2A2.2, not § 2A4.1, and would carry an identical statutory range of punishment as the counts of conviction Mr. Correa faces – 0 to 20 years. The same goes for a violation of 18 U.S.C. § 351(e) (assault of a member of Congress, Cabinet, or Supreme Court) and 18 U.S.C. § 1751(e) (assault of the President, Vice President, or their staff). Both refer to § 2A2.2, not § 2A4.1, and both carry far less serious statutory ranges of punishment (0 to 10 years) compared to kidnapping offenses.

Succinctly put, Mr. Correa was neither charged with a kidnapping offense nor is he or his co-conspirators alleged to have kidnapped anyone in the Indictment. To the contrary, the Indictment here alleges, in relevant parts, that:

> "16. In March 2006, the Jammeh government learned that individuals within The Gambia were attempting to overthrow the Jammeh government (the overthrow of a government is also known as a coup).
>
> 17. The Jammeh government reacted by *arresting* numerous individuals believed to have been part of plotting the attempt to overthrow the Jammeh government. (*emphasis added*)
>
> 18. Individuals who were *arrested* were taken to Mile 2 Prison and to NIA Headquarters to be interrogated about their role in the coup attempt, and were subjected to severe physical and mental abuses at NIA Headquarters."[2] (*emphasis added*)

---

[2] *See* Indictment, Doc. #1.

Neither Mr. Correa nor his co-conspirators are alleged in the Indictment to have committed kidnapping. Instead, Mr. Correa and his co-conspirators were alleged to have arrested Gambians accused of attempting to overthrow the elected government (treason). Those arrested were detained at The Gambia's national prison, Mile 2, and interrogated about their role in the attempted coup by various members of The Gambian government at the National Intelligence Agency (NIA) headquarters.  While being interrogated, the named victims in the Indictment were tortured (assaulted) in order to obtain confessions later used to convict them in court.

Like offenses under 18 U.S.C. §§ 115(a), (b)(1), 351(e), 1751(e), Mr. Correa's alleged offenses did not involve kidnapping nor is kidnapping alleged anywhere in the Indictment.   And since the offenses alleged in Mr. Correa's Indictment involve the aggravated assault of individuals who were lawfully arrested, charged, and tried for committing treason or attempted treason, the most appropriate guideline would be § 2A2.2.

### C. Mr. Correa is distinguishable from Mr. Belfast:

In *United States v. Belfast*, 611 F.3d 783 (11th Cir. 2010), Roy Belfast, Jr., a.k.a. Charles Taylor Jr., was convicted of both conspiracy to commit torture and five substantive counts of torture pursuant to 18 U.S.C. § 2340A.[3] At sentencing, over Mr. Belfast's objection, the court adopted § 2A4.1(kidnapping) as the most appropriate guideline. On appeal, the Eleventh Circuit agreed but, in doing so, based its decision on facts perceived by the district court at trial, and not solely based on the conduct alleged

---

[3] Mr. Belfast was also convicted of one count of using and carrying a firearm during a crime of violence.

in the Indictment, which is contrary to Tenth Circuit case law. *United States v. Kupfer*, 797 F.3d 1233, 1245-46 (10th Cir. 2015) (holding that a court may only consider the conduct alleged in the indictment when determining the most appropriate guideline section).

In upholding the district court's decision to adopt § 2A4.1 as the most appropriate guideline for Mr. Belfast, the Eleventh Circuit travelled outside of the conduct alleged in Mr. Belfast's Indictment and noted that "there is absolutely no evidence in this record even suggesting that the seizure of Emmanuel's victims was lawful, or that any of his victims had violated, or were even suspected of violating, Liberian law."[4] Additionally, the Eleventh Circuit further noted that "[n]ot one of these victims was even charged with a crime or brought before a court, and not one was given access to a lawyer, even though the Liberian courts were open and operating."[5] To the contrary, the Eleventh Circuit noted that the victims were transported to secret and remote locations that were not places of lawful detention – such as an abandoned house, a military officer's garage, and pits dug into the ground.

Most if not all of the facts the Eleventh Circuit relied upon to uphold the district court's use of § 2A4.1 versus § 2A2.2 were facts elicited at trial but not alleged in the Superseding Indictment.[6] Mr. Belfast's Indictment, like Mr. Correa's, is devoid of any kidnapping allegations. Nevertheless, both the district court and the Eleventh Circuit condoned the use of the kidnapping guideline based on the elicited facts at trial – which is prohibited in the Tenth Circuit.

---

[4] *Id*. at 825.
[5] *Id*.
[6] 1:06-cr-20758-CMA, Southern District of Florida, Doc. #222.

However, even if the Tenth Circuit allowed the selection of the most appropriate guideline section based on the facts elicited at trial, as the Eleventh Circuit did in *Belfast*, those facts would support the application of § 2A2.2, "Aggravated Assault," to Mr. Correa. Unlike *Belfast*, the victims here were arrested for committing crimes (treason), detained in places of lawful detention (Mile 2 Prison), charged with crimes (treason and attempted treason), provided access to attorneys, and brought to court to stand trial. The crimes here occurred when those who refused to admit to trying to overthrow The Gambian government were tortured to obtain confessions to later be used against them at trial. That is not kidnapping. That is aggravated assault.

Section 2A2.2 is the most appropriate guideline section for Mr. Correa's offenses. The offenses under § 2A2.2 are far more akin to Mr. Correa's offenses than those under § 2A4.1, as evidenced by the range of punishments permissible for offenses under § 2A2.2 versus § 2A4.1. It would be inappropriate to apply a guideline section applicable to offenses that carry no appreciable statutory maximum to Mr. Correa when the offenses he has been convicted of carry a maximum sentence of twenty years imprisonment.

D. <u>Mr. Correa is distinguishable from Mr. Roggio</u>:

Mr. Correa's case is equally distinguishable from the only other case cited by the government in support of their argument that § 2A4.1 (Kidnapping) is the most appropriate guideline here.

In *United States v. Roggio*, 2024 WL 1661117 (M.D. Penn.), the district court appropriately, and differing from the court in *Belfast*, based its determination of the most appropriate guideline on the charges in the Superseding Indictment for which Mr. Roggio was convicted. Specifically, the district court noted that "a jury found Ross Roggio guilty

9

of Counts 1 and 2 of the Superseding Indictment which, in part, state 'Roggio directed Kurdish soldiers to *abduct* the victim, detain the victim at a Kurdish military compound for approximately 39 days, and torture the victim during multiple interrogation sessions led by Roggio.'" (*emphasis added*).

The district court's finding in *Roggio* is unsurprising given the fact that the government there alleged in the Superseding Indictment that Mr. Roggio *abducted* the victim and then proceeded to torture him for approximately 40 days. Federal kidnapping, in violation of 18 U.S.C. § 1201, involves, *inter alia*, allegations that an individual unlawfully seized, confined, inveigled, decoyed, kidnapped, *abducted*, or carried away and held for ransom or reward any person. Succinctly put, Mr. Roggio was alleged to have abducted (kidnapped) an employee who raised concerns about Roggio's weapons project and, while unlawfully detained, Roggio tortured the employee.

Mr. Correa, on the other hand, has not been charged with or convicted of abducting (kidnapping) any of his victims. Instead, those victims, as set forth in the Indictment, were lawfully arrested by Gambian authorities for the alleged crime of treason, incarcerated pretrial at the only national prison in The Gambia, Mile 2, and ultimately charged and convicted of those crimes. Unlike *Roggio* and *Belfast*, Mr. Correa is not alleged to have unlawfully detained or unlawfully abducted or, succinctly put, kidnapped anyone whatsoever. As such, applying the kidnapping guideline here would be inappropriate, at best.

Also telling in *Roggio* is the district court's reliance, in part, on *Belfast*, when it noted that kidnapping is one method of obtaining and maintaining custody or physical control over another. *Id*. at *5. This quote is also relied upon by the government here

10

when arguing that the kidnapping guideline is applicable to Mr. Correa. And yes, *Roggio* and *Belfast* are both correct, kidnapping is *one method* of obtaining custody and physical control over another person. But it is not the only method. Here, unlike *Roggio* and *Belfast*, there is no allegation that Mr. Correa obtained and maintained custody or physical control over the victims by means of kidnapping them. Instead, the government readily acknowledges in the Indictment that the victims here were arrested for committing a crime – treason. The lawful arrest and pretrial detention of an individual is *another method* of obtaining and maintaining custody and physical control over another.

Both *Roggio* and *Belfast* involved allegations that the victim(s) were unlawfully detained. And while *Belfast* erroneously relied on the facts perceived at trial, *Roggio* relied exclusively on the charges in the Superseding Indictment, charges that Mr. Roggio was found guilty by a jury. These charges specifically alleged that he *abducted* his victim. Similarly, in *Belfast*, the court noted that, "there is absolutely no evidence in this record even suggesting that the seizure of Emmanuel's victims was lawful, or that any of his victims had violated, or were even suspected of violating, Liberian law."[7]

Mr. Correa is distinguishable from *Roggio* and *Belfast*. Mr. Correa's Indictment alleges that the victims were arrested for trying to overthrow the Gambian government. The victims were detained pretrial, charged, and convicted of these alleged offenses. While lawfully detained, the victims were tortured to obtain confessions to be later used to secure their convictions at trial. This is akin to an individual in America being arrested for a crime, detained pretrial, and while in pretrial detention, interrogated by law

---

[7] *Id*. at 825.

11

enforcement agents and, in the process, beaten to obtain a confession. That is not kidnapping. That is assault.

E.  *Section 2A2.2 Guideline Calculation (2005 Guidelines Manual):*

Based on the allegations in the Indictment, the most appropriate guideline is Section 2A2.2 (Aggravated Assault). Below is the correct calculation of the most appropriate guideline:

(a) Base Offense Level: **14**

(b) Specific Offense Characteristics:

    (2)(B) – a dangerous weapon was otherwise used **+4**

    (3)(B) – victims sustained permanent or life-threatening bodily injury **+6**.[8]

(c) Adjusted Offense Level: **24**

(d) Chapter Three Adjustments:

    § 3A1.3, Restraint of Victim, **+2**

    § 3B1.2, Mitigating Role, minor participant **-2**[9]

    § 3D1.2(d), offenses covered by §2A2.2 do not group. **+5**

    § 3E1.1(a), Acceptance of Responsibility **-2**[10]

---

[8] Section 2A2.2(b)(3) limits the cumulative adjustment to 10 levels.

[9] Mr. Correa was a private in the GAF at the time of the offense. Mr. Correa did not participate in planning or organizing the criminal activity. Mr. Correa did not exercise decision-making authority or influence the decision-making authority. Mr. Correa further had no discretion in performing those acts and did not stand to benefit from the commission of those acts. President Jammeh and the more senior officers and officials who planned, organized, and ordered subordinates, like Mr. Correa, to commit the crimes are far more culpable.

[10] A defendant can clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his right to a trial; for example, where a defendant goes to trial to assert a legal defense (versus arguing he is factually innocent) and preserve issues that do not relate to factual guilt (*e.g.* constitutional challenges to his prosecution). Mr. Correa did not deny the charges in the Indictment. Mr. Correa argued

(e) Total Offense Level: **27**

(f) Mr. Correa has no criminal history and falls within Criminal History Category **I**.

(g) **27/I = 70 to 87 months.**

**Objection No. 4:**

Mr. Correa objects to ¶ 97 of the PSR. Specifically, Mr. Correa objects to probation's mistaken belief that a two-level minor role reduction is inappropriate because "there were also Junglers who either participated less in the beatings or did not participate at all."

The fact that, within a conspiracy, there might be participants who are both more culpable than the defendant and less culpable than the defendant does not preclude a reduction under § 3B1.2 for having a mitigating role in the offense. In fact, § 3B1.2 has a tiered structure that specifically considers where a participant lands within a particular conspiracy. Some will merit a 4-level reduction for being "plainly among the least culpable of those involved in the conduct of the group," others will merit a 2-level reduction for being "substantially less culpable than the average participant," and yet others will merit a 3-level reduction for having a level of culpability within the group that falls between minimal and minor participation.

Instead of erroneously focusing on whether there might have been participants in the conspiracy who were even less culpable than Mr. Correa, perhaps deserving of a three- or four-level reduction under § 3B1.2, the focus here is:

1. the degree to which Mr. Correa understood the scope and structure of the criminal activity;

---

at trial that he was legally excused due to coercion and/or duress and, in so doing, also preserved his constitutional challenges to his prosecution in the United States.

13

2. the degree to which Mr. Correa participated in planning or organizing the criminal activity;

3. the degree to which Mr. Correa exercised decision-making authority or influenced the exercise of decision-making authority;

4. the nature and extent of Mr. Correa's participation in the commission of the criminal activity, including the acts Mr. Correa performed and the responsibility and discretion Mr. Correa had in performing those acts; and

5. the degree to which Mr. Correa stood to benefit from the criminal activity.

*Section 3B1.2, app. n. 3.*

And, as to the latter, a defendant who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline. *Id*.

Mr. Correa was a private in the Gambian Armed Forces in 2006. Mr. Correa had no command authority, played no role in the planning or organizing of the criminal activity, and had no discretion in how to perform the tasks he was ordered to undertake. Mr. Correa also did not stand to benefit from the criminal activity. In short, all factors set forth in § 3B1.2, app. n. 3, support a two-level reduction in the guideline for the mitigating role Mr. Correa played in light of the many other participants in the conspiracy. Whether there might be other participants who deserve more of a reduction is not material.

**Objection No. 5:**

Mr. Correa objects to ¶ 192 of the PSR. Specifically, Mr. Correa objects to probation's determination that there are no factors that may warrant a downward departure from the advisory guidelines. Section 5K2.12 allows this Court to depart downward from the applicable guidelines based on an incomplete coercion and/or duress defense.

The testimony and evidence elicited at trial from the government's own witnesses support a downward departure pursuant to § 5K2.12 here. For example:

Many Junglers lived in constant fear because they worked directly with and for President Jammeh and were "killed as soon as other Junglers don't trust them."[11] Further, "Junglers had to carry out President Jammeh's orders without question, or Jammeh would have the other Junglers kill the dissident who disobeyed."[12] Sainey Bayo's testimony aptly described the situation. You had to be cautious under President Jammeh, otherwise you would die quickly.[13] And the closer you got to President Jammeh, the more likely you would be executed if he thought you were being disloyal.[14] Mr. Bayo also provided examples of those close to President Jammeh who were executed because they were thought to be involved in the March 2006 coup (i.e., disloyal); they included Alpha Bah and Malafi Corr.[15]

Pharing Sanyang is an example of how dangerous it was to work directly with President Jammeh. President Jammeh attempted to kill him – a high-ranking member of the state guard – for failing to follow orders.[16] Mr. Sanyang was a senior member of the state house—the commander of the commandos tasked with the personal protection for President Jammeh.[17] President Jammeh ordered Mr. Sanyang to kill a journalist.[18] When Mr. Sanyang failed to carry out the order, President Jammeh had another member of the

---

[11] Trial Transcript, Day Four, p. 796.
[12] *Id*. at p. 796.
[13] Trial Transcript, Day Three, p. 558.
[14] *Id*. at p. 562.
[15] *Id*. at p. 662.
[16] Trial Transcript, Day Four, p. 786.
[17] *Id*. at p. 779.
[18] *Id*. at p. 778.

15

state guard, Suleyman Badjie, attempt to kill Mr. Sanyang.[19] On their way home from an attempt to locate the journalist, Mr. Badjie ran the passenger side of their car, where Mr. Sanyang was sitting, headfirst into a parked car.[20] Mr. Sanyang suffered significant injuries, and a senior military commander told Mr. Sanyang it wasn't safe at the state house because President Jammeh tried to have him killed.[21] All because he failed to follow President Jammeh's orders.[22]

Additionally, the government played for the jury at trial an audio recording of Mr. Correa testifying in immigration court. As relevant here, Mr. Correa was heard testifying that:

> After Pierre confessed, because I did what I was ordered to do and then I, I [U/I] back, [U/I] back and then I told, uh Bora Colley, "Yeah, he started, he started talking, he started, he stated talking" then when I [U/I] back, and then from there a couple of minutes later we come back as a group, uh, Nuha has to brief Captain, uh, um, Tumbul Tamba. Tumbul Tamba was constantly in tele ... [BACKGROUND: COUGHING] in contact with the President, he's, 'cause he's the one who was [U/I] the executive, receiving executive orders from the President, "That this is what I want" and then, at that moment if you don't do it, we all know the consequences, if we don't do it, you'll be r. .. you'll be, you'll be out of, you'll be out of [U/I] **he will kill you there or you'll be, you'll be, you'll be tortured**. And [U/I] back and then a few minutes later we come back as a group and then they told us that we go back to our homes, that's when we left.[23]

---

[19] *Id*. at pp. 782-783.
[20] *Id*. at p. 782.
[21] *Id*. at p. 784.
[22] *Id*.
[23] Government Exhibit 91D (*emphasis added*).

The fear of being tortured or killed if they disobeyed President Jammeh's orders was substantiated by stipulations of fact submitted to this Court during Mr. Correa's trial that indicated:

(1) the Junglers had to carry out President Jammeh's orders without question, or Jammeh would have the other Junglers kill the dissident who disobeyed.[24]

(2) Junglers lived in constant fear, and that Junglers are killed as soon as other Junglers don't trust them.[25]

Succinctly put, Mr. Correa committed the offenses because of serious coercion and duress, whether or not the jury found that it amounted to a complete defense at trial. And this coercion and duress, this threat of physical injury if he did not comply with President Jammeh's demands, should be adequately taken into consideration by this Court under § 5K2.12 when determining the appropriate range of imprisonment under the advisory guidelines.

**Objection No. 6:**

Mr. Correa objects to probation's recommendation, on page R-1 of the PSR, that this Court should impose a term of supervised release to follow Mr. Correa's sentence of imprisonment. It is certain that Mr. Correa will be deported from the United States after serving the sentence imposed by this Court.  As such, a term of supervision would be pointless and is not recommended by the Sentencing Commission (§ 5D1.1, app. n. 5).

---

[24] Trial Transcript, Day Four, p. 796.
[25] *Id*.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

*/s/ Matthew K. Belcher*
MATTHEW K. BELCHER
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
Email: Matthew_Belcher@fd.org
Attorney for Defendant

## CERTIFICATE OF SERVICE

I certify that on August 1, 2025, I electronically filed the foregoing ***Defendant's Objections to the Presentence Investigation Report*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of record.

I also certify that I will mail the document to the Defendant, Michael Sang Correa.

*/s/ Matthew K. Belcher*
MATTHEW K. BELCHER
Assistant Federal Public Defender