IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00148-CMA

UNITED STATES OF AMERICA,

　　　　Plaintiff,

v.

1.　MICHAEL SANG CORREA,
　　　a/k/a MICHAEL CORREA,
　　　a/k/a SANG CORREA,
　　　a/k/a MICHAEL COREA,
　　　a/k/a MICHAEL SANG COREA,
　　　a/k/a SANG COREA,

　　　　Defendant.

### GOVERNMENT'S OBJECTION TO PRESENTENCE REPORT

On July 18, 2025, the United States Probation Office filed the initial Presentence Report ("PSR") for the defendant, Michael Correa. See ECF No. 234. As a general matter, the government agrees with the PSR's reliance on U.S.S.G. § 2A4.1, which provides the applicable Guidelines calculation for kidnapping offenses. See PSR ¶ 92. The government, however, submits that § 2A4.1(b)(4)(A)'s two-level enhancement applies because the victims were held at Mile 2 prison for more than thirty days before they were charged with a crime. Although the application of that enhancement would not change the overall Guidelines calculation, see PSR ¶¶ 139, 142, the government nonetheless submits this objection to clarify its position as to that enhancement and related facts elicited at trial.

1

Initially, the government suggests a slight revision to paragraph 95, which is related to § 2A4.1(b)(4)(A)'s two-level enhancement, based on the evidence elicited at trial. The PSR states that "several of the victims were held at NIA headquarters where they were tortured for more than seven days before being transported back to Mile 2 Prison." PSR ¶ 95. The evidence at trial, however, established that each of the named the victims were transported back and forth between the NIA headquarters and Mile 2 prison multiple times in between the torture sessions. Moreover, many of the victims testified that they were detained at Mile 2 prison for more than 30 days before being charged with a crime—even though the Gambian constitution required otherwise. Indeed, Tamsir Jasseh (Victim 2) testified that he was not afforded any of the normal rights or procedures that apply to individuals charged with crimes in The Gambia, including receiving an arrest warrant, being taken to a police station, and being provided a legal representative. Both Mr. Jasseh and Yaya Darboe (Victim 1) testified that the Gambian constitution required that individuals be charged with a crime within 72 hours of their arrest.

The testimony at trial further established that individuals arrested in connection with the March 2006 coup attempt were not charged within 72 hours, and, in fact, were not charged until well after their torture ended. Demba Dem (Victim 3) testified that he was not charged with treason and conspiracy to commit treason until one year after his arrest, and Tamsir Jasseh testified that he was charged with treason, conspiracy to commit treason, and accessory to treason approximately six months after his arrest. Finally, although not a charged victim, Alieu Jobe testified that he was not charged with a crime until three months after his arrest.

The government submits that § 2A4.1(b)(4)(A)'s two-level enhancement applies because the victims were "not released before thirty days had elapsed." Specifically, the government objects to paragraph 95 (applying § 2A4.1(b)(4)(B)'s one-level enhancement for Count 1 because the victims were not released before seven days); paragraph 110 (applying § 2A4.1(b)(4)(B)'s one-level enhancement for Count 3 because Tamsir Jasseh was not released before seven days); and the PSR's lack of any § 2A4.1(b)(4) enhancement for Count 2 (Yaya Darboe), Count 4 (Demba Dem), and Count 7 (Pharing Sanyang).

The two prior torture cases that have applied § 2A4.1's Guideline calculations support the result urged here. In *United States v. Roggio*, in which the defendant was convicted of torture, although the victim was not transported between two locations as the victims were here, the court did not limit its analysis of the enhancement strictly to the time period when the victim was tortured. The court explained that "Mr. Roggio's unlawful detention of [the victim] for 39 days went far beyond what was inherent in the ten torture sessions during that period." *United States v. Roggio*, No. 3:18-CR-97, 2024 WL 1661117, at *4 (M.D. Pa. Apr. 16, 2024). The court focused on the legality of the victim's detention, explaining that "no evidence at trial suggested that [the victim] was lawfully detained. Rather, credible evidence presented at trial indicated otherwise. As noted by the Government '[a]n Iraqi judge provided expert testimony that what happened to the victim was not permitted by the laws of Iraq.'" *Id.* at *7. The court applied a two-level enhancement, for when a victim is held more than 30 days.

Similarly, in *United States v. Belfast*, in which the defendant also known as "Chuckie Taylor" was convicted of torture, the Eleventh Circuit upheld the district court's

3

application of the kidnapping guideline.  It explained that "the evidence showed that even if Emmanuel's victims were initially detained under lawful circumstances, the extended length and nature of their detention, coupled with the utter lack of access to courts, attorneys, or any information about their arrest, rendered the duration of their imprisonment wholly unlawful."  *United States v. Belfast*, 611 F.3d 783, 825–26 (11th Cir. 2010).  It continued: "Not one of these victims was ever charged with a crime or brought before a court, and not one was given access to a lawyer, even though the Liberian courts were open and operating."  *Id.*

Here, the government submits that the appropriate measure of time for this enhancement is after the victims were arrested and before they were charged with a crime.  As relevant to the counts of conviction:[1]

- Count 1: As set forth above, multiple victims testified that the Gambian constitution required that individuals be charged with a crime within 72 hours of their arrest.  Multiple victims also testified that they were not charged until 6 months (or longer) after their arrest.  Applying § 2A4.1(b)(4)(A)'s two-level enhancement would result in an offense level of 40 for this count.

- Count 2: As set forth above, Yaya Darboe testified that the Gambian constitution required that individuals be charged with a crime within 72 hours of their arrest.  He also testified that he was taken back and forth to

---

[1] There was no evidence elicited at trial regarding the length of time during which Pierre Mendy (victim of Count 6) was tortured in the aftermath of the March 2006 coup attempt.  Accordingly, the government does not dispute the Guidelines calculation as it relates to Count 6.

the NIA to be tortured approximately four times over the course of three weeks. He was not charged with a crime until well after his last torture session. Accordingly, at a minimum, a one-level enhancement should be applied for Count 2 under § 2A4.1(b)(4)(B) because he was held and tortured over a period of more than seven days.

- Count 3: As set forth above, Tamsir Jasseh testified that the Gambian constitution required that individuals be charged with a crime within 72 hours of their arrest. He was not charged with treason-related offenses until six months after his arrest. Applying § 2A4.1(b)(4)(A)'s two-level enhancement would result in an offense level of 40 for this count.

- Count 4: As set forth above, Demba Dem testified that he was not charged with treason and conspiracy to commit treason until over one year after his arrest. Prior to being charged, he was taken to the NIA to be tortured approximately three times in the days and weeks after his arrest. Applying § 2A4.1(b)(4)(A)'s two-level enhancement would result in an offense level of 40.

- Count 7: As set forth above, Pharing Sanyang testified that he was tortured at the NIA on three separate occasions, including on the evening of his arrest, March 20, 2006; on March 26, 2006; and on April 6, 2006. Accordingly, at a minimum, a one-level enhancement should be applied for Count 7 under § 2A4.1(b)(4)(B) because he was held and tortured over a period of more than seven days.

Therefore, in this case, the measure of time for purposes of this enhancement should not be constrained by the length of time that the victims were subjected to torture at the NIA headquarters but should rather be the time period after they were arrested and illegally detained without charge beyond the requisite 72-hour period.

Respectfully submitted this 1st day of August, 2025.

PETER MCNEILLY
United States Attorney

*s/ Melissa Hindman*
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0401
E-mail: Melissa.Hindman@usdoj.gov
Attorney for the Government

*s/ Laura Cramer-Babycz*
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Phone: (303) 454-0100
Fax: 303-454-0401
Email: Laura.Cramer-Babycz@usdoj.gov
Attorney for the Government

MATTHEW R. GALEOTTI
Acting Assistant Attorney General
Criminal Division

By: *s/Christina Giffin*
Christina Giffin
District of Columbia Bar No. 476229
Deputy Chief
United States Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 1200

Washington, D.C. 20530
Telephone: (202) 514-5792
Facsimile: (202) 305-4624
Email: Christina.Giffin@usdoj.gov

By: *s/Marie Zisa*
Marie Zisa
New York Bar No. 5663265
Trial Attorney
United States Department of Justice
Criminal Division
Human Rights and Special Prosecutions
1301 New York Ave. NW, Suite 1200
Washington, D.C. 20530
Telephone: (202) 305-3731
Facsimile: (202) 305-4624
Email: Marie.Zisa@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on the 1st day of August, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification to all counsel of record.

            <u>*s/Laura Cramer-Babycz*</u>
            Assistant United States Attorney
            United States Attorney's Office
            1801 California Street, Suite 1600
            Denver, CO 80202
            Telephone: 303-454-0100